Desmond, J.
Plaintiff as beneficiary got judgment for the face amount (less loans) of a life insurance policy written by defendant Occidental Life Insurance Company on the life of plaintiff’s late husband Nathan Moses Coneoff. Appellate Division, First Department, affirmed unanimously without opinion and wb granted leave to appeal. Occidental had refused payment on the alleged ground that, at the time of the death of the insured on May 23,1954, current and earlier premiums had not been paid and that since the indebtedness exceeded the cash surrender value the policy had lapsed. The beneficiary took -the position *634 that on the whole agreement between the parties, including a special provision for higher premiums while decedent resided in China and a reduction of premiums when he should return to the United States, there was sufficient reserve or surrender value in the policy above the debt to keep the insurance in effect on and past the date of death. There was a jury trial and the verdict was in favor of plaintiff on the questions of fact. However, we must decide whether there was substantial error in taking proof of oral negotiations in China between the insured and the company’s representative and, also, whether there was serious error in the court’s charge to the jury.
It appears that the so-called “ Ordinary Life Policy ”, into which the original term policy was converted in February, 1947 and which ordinary life policy is the one here in suit, was issued by the company in New York and so New York law governs.
Before and after World War II one Theodore Saphiere was an agent for defendant in Shanghai, China. Early in 1946 Saphiere solicited decedent Nathan Moses Concoff, an American citizen by birth who had lived in China for many years, to purchase a life policy. Concoff had bought several policies from defendant Occidental before the war but those earlier policies had lapsed while Concoff was interned in a Japanese camp. Saphiere, no longer employed hy the company, was the principal witness for plaintiff on the trial. He testified that during these discussions about a new policy for Concoff, the latter stated that he was leaving China for the United States and that his family was going there ahead of him. According to Saphiere, Concoff, when Saphiere suggested that Concoff take out some new life insurance, said that he would wait until he got to the United States so that his premiums would be lower than he would be required to pay for a policy purchased in China. Saphiere testified that he then told Concoff that if Concoff should take out a policy in Shanghai he would be charged the North China rate but that if Concoff should later remain in the United States for three months or longer, he would, according to the rules and regulations of defendant, get a refund of the additional premium charged. Saphiere said that he urged Concoff to have the policy written in China because by so doing Concoff would have protection during his trip to the States. Concoff then signed in *635 Shanghai in May, 1946 an application for a $50,000 ten-year convertible policy with a total annual premium of $853 in United States dollars. For a similar policy for Concoff in the United States at that time the premium would have been only $579 but Saphiere wrote into the application an annual premium figure of $683 which Saphiere computed from a rate book for Europeans in North China issued by defendant and which was admitted in evidence. Saphiere and Concoff then took the application to Lee, defendant’s general agent in Shanghai, and after some discussion as to the possibility that Occidental’s rates might have been changed during the war it was arranged that Concoff agree to pay and pay a premium at the rate of $853 per year so as to be sure to be covered. Saphiere, in Lee’s presence, again told Concoff that any excess of this premium over the prevailing rate in the United States would be credited to Concoff’s premium deposit account when he should return to the United States. The application signed by Concoff contains the figure of $853 as the total annual premium, and just under that is written “ Table ‘A’”. Defendant at the trial conceded that ‘ ‘ Table ‘ A ’ ” in this connection meant that an extra premium was being charged because of residence, that is, a so-called “ residence extra ”. Concoff paid the $853 and left for the States taking with him at the request of Lee, for delivery to defendant’s home office in California, a number of papers which Lee wanted to reach that office and which included the policy application, Concoff’s draft in payment, etc. A letter in evidence which Lee sent to defendant Occidental through Concoff included a statement that Lee had computed the premium according to the latest available rate book and that any excess could be credited to Concoff’s premium account. This letter is significant since in it Lee told Occidental that the application had been taken in China 11 because Mr. Concoff is leaving for America and expects to stay in America for some time ’ ’. The $50,000 ten-year-term policy was issued by defendant under date of July 12, 1946, and mailed to Concoff in New York. On the face of that policy is this sentence: “ If a charge for any supplemental agreement is included and if this charge ceases, then premiums thereafter payable will be reduced accordingly.” There is a dispute as to whether this language applies in the case of a “ residence extra ” but on its face it could so apply and thus *636 there is an ambiguity in the policy. As we shall show later, this is important on the question of whether the trial court erred in taking, over defendant’s objection, Saphiere’s testimony above referred to as to his statements in China to Concoff! that the excess premium would be credited to Concoff when and if Concoff should go to the United States and remain there.
In February, 1947, at Concoff’s request, the policy was converted to an ordinary life policy. The premium stated in this policy was $1,441 but that amount, too, included a 11 Table A ’ ’ surcharge of $156.50 per year as a “ residence extra ”. Nothing in the new policy (or in the original policy) showed this breakdown but it was testified to by defendant’s officers at the trial. In other words, the original term policy premium and the substituted ordinary life policy premium both contained a substantial additional factor because of China residence although actually Concoff had returned to the United States ■ to live before either policy was issued. Attached to the new policy was the original application for the term policy containing the “ Table A ” reference opposite the premium figure.
Both the policies contained provisions wherein the company agreed that it would automatically use for premium payment any moneys deposited with it for that purpose by the insured. Also, there was in each policy the familiar provision that on default in payment of any premium the cash surrender value of the policy would automatically be applied to the payment of the premium.
One of the important items in the trial record is Exhibit 20 which is a “ Special Instruction ” from defendant to its agents on the subject of “ Removal of China and Philippine Extras ”. It is undisputed that this document was in effect and in the hands of the Shanghai agents at the time Concoff applied for this policy. In its first paragraph it says that a white person residing in China or the Philippine Islands and paying premiums based on such residence is entitled to a refund of the extra premium charged for such residence if the insured takes up temporary residence in the United States, Canada or Europe and that a prorata share of the annual residence extra based on the time between the departure from China and the return to China shall be refunded to the insured, except that no credit shall be given for being away from China for less than three months. There *637 is ample proof not only that Saphiere knew of and acted on Exhibit 20 but, as we have seen, that Concoff was told about this instruction in the discussions prior to applying for this policy. Without going into figures, it is undisputed that, if Concoff was entitled to this refund under his agreement, his absence from China was of such duration as to create a credit to him more than sufficient to pay the premium up to and beyond the date of his death.
The company’s first point is that all this testimony about conversations between Saphiere and Concoff was inadmissible and merged in the written policy, the authority for this point being section 142 of the New York Insurance Law and the terms of this policy both of which say that nothing can be incorporated into a policy by reference to any other paper except an application, copy of which is attached to the policy. Occidental cites in this connection such cases as Minsker v. John Hancock Mut. Life Ins. Co. (254 N. Y. 333), Lampke v. Metropolitan Life Ins. Co. (279 N. Y. 157) and Abbott v. Prudential Ins. Co. (281 N. Y. 375). In other words, says the insurer, the whole of the contract between these two parties was contained Avithin the policy and the application which was made a part thereof and there is nothing in those documents to entitle the insured to the credit on which plaintiff’s cause of action depends. We think a sufficient answer to this contention as applied to this case is found in Rasmussen v. New York Life Ins. Co. (267 N. Y. 129). The requirement that the whole contract be found in the policy and the application does not mean that an ambiguity therein may not be resolved by the use of oral testimony. Rasmussen held that a policy exclusion from double indemnity of death from 1 ‘ the taking of poison or inhaling of gas was sufficiently inexplicit so that proof could be taken of the circumstances of the particular case to determine what that language meant. There is, as it seems to us, much more in the present ease by way of ambiguity. In the first place the policy here sued on contained a provision Avhich might or might not cover this situation, that is, the policy language which says that if a charge for any supplemental agreement is included and if this charge ceases, then premiums thereafter payable Avill be reduced accordingly. If we add to that language the words “ Table ‘ A ’” in the application attached to the policy itself we have an uncertainty of *638 meaning subject to oral explanation. The trial court, therefore, was not in error in letting plaintiff prove the conversations of Coneoff with Saphiere and in allowing Saphiere’s testimony to be confirmed by Exhibit 20. Such a holding does no violence to section 142 or to the cases which prevent either the insured or the company from relying on alleged statements of company agents not written into the application or, if written into the application, not physically made a part of the policy.
In its other points on appeal the company complains of alleged errors in the charge and alleged errors in refusing to charge. The alleged errors in the charge consist of statements of the Trial Justice as follows :
“ A contract may be oral or in writing, or part oral or part in writing.
“ There is no difference in the law between a contract of insurance and any other written or oral contract. ’ ’
Those expressions are, read off by themselves, somewhat surprising but when we read the whole charge we find that at this early point in the court’s instructions to the jury he was expressing some general rules about contracts (see McGrail v. Equitable Life Assur. Soc., 292 N. Y. 419, 424, as to policies being construed just like other contracts). Ordinarily and standing alone, a statement that a contract of insurance may be oral would be error. However, we must keep in mind that in this case the court already had admitted all this oral testimony by Saphiere as to the excess charge premium charged in China and as to his (Saphiere’s) notification to Coneoff that if Coneoff should return to the United States there , would be a credit, etc. Since the receipt of that evidence was because of the ambiguity not erroneous, then it was not only not erroneous but necessary that the Judge make clear to the jury that in getting at the meaning of this contract of insurance such oral testimony should be considered. The same answer goes to the contention of appellant that the court erred in refusing to charge the jury that plaintiff is bound by the terms of the policy and that the jury must disregard all other writings and all alleged conversations between Coneoff and Saphiere. As general propositions those requests state the law. However, giving such instructions in this case would have confused the jury. The court had properly admitted testimony as to the Saphiere-Concoff conversations and *639 the documents explaining the extra charge for residence in China. The trial court did submit to the jury the question of fact as to whether Saphiere exceeded his authority in the information he gave to Concoff but the jury answered that question in favor of plaintiff and there is little or no dispute, taking the testimony of company representatives themselves, of such authority.
The judgment should he affirmed, with costs.
Chief Judge Conway and Judges Dye, Fuld, Froessel, Van Voorhis and Burke concur.
Judgment affirmed.