William L. Underwood, Jr., J.
This case has had a lengthy legal history arising primarily as the result of the construction of a contract involving a complex real estate transaction.
A brief review of its history will place the case in its present posture.
On June-10, 1969, plaintiff and defendant, Ella Freidus (the contract is in her name but since her husband is named ás a defendant, the court will hereinafter refer to them in the plural), entered into a contract of sale of 20 acres of land in Lloyd Harbor, New York. Simultaneously therewith, they entered into a lengthy memorandum agreement (hereinafter referred to as the Agreement). The Agreement permitted the plaintiff to exercise an option to repurchase 17 acres within 30 months from June 10, 1969, provided it complied with certain conditions.
In 1971, prior to the expiration of the option, plaintiff and defendants could not agree on their respective responsibilities and obligations to be performed under the Agreement and plaintiff sued for a declaratory judgment. The action was terminated by a stipulation of settlement and plaintiff’s time to exercise the option was extended to February 23, 1972.
Plaintiff believed that defendants were "unco-operative” and moved to vacate the stipulation. A hearing was held and an order was entered on May 16, 1973, extending plaintiff’s time to exercise its option to August 31, 1973. The order directed defendants to pay any tax lien or arrearage affecting the premises. It also ordered both sides to comply with all of the terms and conditions set forth in the Agreement and stipulation.
Plaintiff exercised its option and scheduled a closing for August 31, 1973; defendants did not appear. Plaintiff moved to punish defendants for their willful contempt and disobedience of the May 16, 1973 order. A hearing was held and the defendants did not present any evidence in opposition. The court found that the defendants’ conduct did impede, impair and prejudice the rights of plaintiff and adjudged them in *1026 contempt. The court, however, did permit them to purge themselves by conveying the "optioned land” to plaintiff.
Another closing was scheduled for July 2, 1974, and again, defendants failed to appear. Plaintiff presently seeks an order directing the Sheriff to convey the property to it (see CPLR 5107). Defendants opposed the motion and requested a hearing to "resettle” the court’s order of April 22, 1974, to protect defendants’" rights under the Agreement. Defendants allege four areas of concern, namely, (1) full and free access to Dock Hollow Road and title insurance therefore; (2) a survey of the property; (3) payment of taxes and interest; (4) payment of attorney’s fees.
At the hearing on July 25, 1974, the court permitted the defendants to reopen the order for the purpose of presenting evidence and arguments concerning the four items.
Defendants however, incorrectly cross-moved to resettle the court’s order of April 22, 1974, to have the court consider the four additional issues. (2 Carmody-Wait 2d, NY Practice, § 8:125 et seq.) The court treated the cross motion as one to reargue plaintiff’s motion to punish defendants for contempt because all the facts were not before the court when it decided the initial motion. The court exercised its discretion in the interest of justice because of the protracted litigation and defendants’ statement that "in an effort, in good faith, to put before the Court all of the questions that could be raised with respect” to the conveyance, this action would be finally laid to rest.
I: FULL AND FREE ACCESS TO DOCK HOLLOW ROAD
The contract of sale contained a description of the property which included "an easement and right-of-way for ingress and egress over a private right-of-way known as Dock Hollow Road”. The contract also contained a clause that the "Seller warrants and represents that the Purchaser shall have full and free access to Dock Hollow Road for the purpose of ingress and egress * * * [and] * * * this representation and warranty to survive delivery of the deed.”
The Agreement stated that "it is an express condition of this Agreement that after partition of the whole of said premises, the second party shall continue to have and enjoy unimpeded access over Dock Hollow Road * * * in the same *1027 manner as is provided and prescribed in the contract of sale * * * and the second party shall obtain title insurance therefore as a condition precedent to conveying the seventeen acre parcel.”
Defendants construe these provisions to mandate that plaintiff give defendants access to Dock Hollow Road without their paying maintenance charges for the use of the road, and title insurance to that effect. In other words, defendants want more than merely being able to use the road.
To sustain their position, defendants rely on the following items expounded by them at the hearing. First: both defendants testified that they expressed concern over the condition in the preliminary contract that required them to join the Dock Hollow Road Association (hereinafter referred to as the Association) and pay the road maintenance charges, and that the Association (by two letters) had stated that access was conditioned upon payment of the maintenance charges. They did not want this condition in the contract and the closing "broke-up” over this point. The condition was deleted from the contract as signed by the parties. Second: since the defendants obtained an easement over the road, the additional language concerning "full and free access” and the amendments (i.e., deleting the provision that defendants join the Association and pay maintenance charges, title insurance, the seller’s warranty of access to survive delivery of the deed, and to be defended by the seller at his own cost) necessarily added something to the contract. Third: defendants introduced several letters (which were dated before the expiration of the first option period and shortly thereafter) from their attorney and from plaintiff’s attorney to show that the parties intended that defendants could use the road without paying the maintenance charges. Specifically, defendants point to two letters (January 10, 1972 and January 19, 1972) whereby defendants’ attorney confirmed plaintiff’s attorney’s statement that defendant would not have to become members of the Association or pay maintenance charges because plaintiff "will take care of it”, and that plaintiff’s attorney would deposit $10,000 or $15,000 of his fee with the Association to cover defendants’ maintenance charges. Fourth: plaintiff sued the Dock Hollow Road Association on behalf of the defendants to permit them to use the road. Fifth: the title policy concerning access to the road is conditioned upon defendants’ maintaining a singe-family residence, joining the Association, and paying the mainte *1028 nance charges. Defendants contend that the policy should be an unconditional one as required by the Agreement.
Plaintiff, on the other hand, contends that "full and free access” means that defendants will be provided with access to and use of the road, but that they will have to pay the maintenance charges for the upkeep of the road in the same manner as the other abutting landowners. In support thereof, plaintiff relies on the following: First: the president of plaintiff testified that the defendants did not want to join the Association but orally agreed to pay for the maintenance charges. Second: a Lloyd Harbor Village Ordinance requires all abutting landowners of a private road to pay the maintenance charges and that would include defendants. Third: the term "full and free access” means unobstructed and unrestricted access and does not refer to monetary access (Missionary Soc. of Salesian Congregation v Evrotas, 256 NY 86; Brill v Brill, 108 NY 511). Fourth: defendants have had unrestricted access over the road without paying their share of the maintenance charges. (Defendants reply that there is an outstanding temporary restraining order prohibiting the Association from barring defendants from using the road.) Fifth: plaintiff has furnished title insurance for access to the road.
What then, was the parties intention when they used the phrase "full and free access” to Dock Hollow Road?
The construction or interpretation of a contract is determination of the meaning attached to the written words which comprise the contract. Where the language of a contract is unambiguous and the words are plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation, for effect must be given to the intent as indicated in the language itself (Matter of Western Union Tel. Co. [American Communications Assn.], 299 NY 177). Therefore, the words and phrases used in particular contracts are to be interpreted in accordance with the meaning with which they have been invested by the parties.
On the other hand, when a written contract is unclear or ambiguous in its meaning or application, parol and other extrinsic evidence is admissible to explain or interpret the writing (Concoff v Occidental Life Ins. Co. of Cal., 4 NY2d 630). The preliminary question to be resolved is whether or not there is an ambiguity.
The traditional view is that the search for the ambiguity must be conducted within the "four corners” of the writing, *1029 unaided by any reference to external circumstances. (See 30 Am Jur 2d, Evidence, § 1066.) However, this court will adopt the more modern and enlightened view, and accept any evidence of the parties’ negotiations and of any other relevant external circumstances in order to ascertain whether a written contract is ambiguous. (Ambiguity in Contracts — Extrinsic Evidence, Ann., 40 ALR3d 1384, § 4, and cases cited therein; Restatement, Contracts, § 242.) The ultimate goal of the judicial system is to ascertain the truth and any evidence which aids the court in its search should be admissible; the weight to be given to the evidence is for the court or a jury. Contrary to plaintiffs position the court is not rewriting the contract, but looking for the parties’ intention.
The court therefore determines, after the hearing, that there is an ambiguity in this contract and will review all the circumstances (even after the contract was signed) to ascertain the true meaning of the parties when they signed the contract.
Parol evidence is admissible "for the purpose of applying the terms of a contract to its subject and removing any ambiguity which arises from such application, [and] it is permissible to show by the declarations of the parties before or at the time of the contract or afterwards, what was meant by its terms.” (Murdock v Gould, 193 NY 369, 375; emphasis added; 32A CJS, Evidence, § 960, p 405; Richardson, Evidence [10th ed], § 625 et seqj
A careful review of the evidence clearly indicates that the phrase "full and free access” to Dock Hollow Road means that the defendants do not have to pay the maintenance charges for its upkeep. The true intention of the parties was to place an obligation on the plaintiff to reimburse defendants for their share of the maintenance charges. (Cf. Bauer v Lovelace, 272 App Div 820.)
The court finds that (1) the defendants, prior to the signing of the contract, expressed their intention not to join the Association or pay maintenance charges; (2) the closing "broke-up” over this point; (3) the new contract deleted the condition that defendants join the Association and pay maim tenance charges; (4) the amendments to the contract concerning access to Dock Hollow Road necessarily "added” something to the contract, especially since defendant would receive an easement over the road in the deed; and (5) the course of conduct between plaintiff’s attorney and defendants’ attorney, *1030 as evidenced by their letters, indicate that the parties intended that defendants would not be liable for the maintenance charge. (Plaintiff argues that it did more than it was required to by the contract to do concerning access, in order to consummate the real estate transaction. However, its attorney’s letters to defendants never "qualified” its offers concerning access. For instance, plaintiff’s attorney never stated, "although I am not required by the contract to give you free [monetary] access to the road, I will do the following”.) The title insurance policy submitted by plaintiff does not give defendants unconditional full and free (monetary) access over the road.
II: THE SURVEY
The Agreement states that plaintiff shall acquire approximately 17 acres, and defendants’ remaining land "shall not be less than three acres in area” which shall be defined by an actual field survey according to the boundaries set forth in the Agreement.
Plaintiff gave defendants an actual field survey, prepared by a licensed land surveyor, and defendants objected to it on three grounds, in that it does not comply with the boundaries contained in the Agreement.
At a previous hearing held on November 8, 1973, the surveyor testified to the preparation of the survey, and the survey itself was introduced into evidence.
The court, upon review of the survey and the testimony of the licensed surveyor and the defendants, determines that the survey complies with the description contained in the Agreement. The objections by defendants do not warrant the rejection of the survey.
If there are any variances, the court will look to the spirit of the Agreement and not the letter of it, and the question therefore is not whether a party has literally complied with it, but whether he has substantially done so. The failure, if at all, to perform exactly according to the Agreement was inadvertent and unintentional because the survey took into account the topography of the land. Under all of the circumstances the survey was reasonable and in accordance with the parties intentions. (Oberlies v Bullinger, 132 NY 598; Rush v Wagner, 12 NYS 2; 10 NY Jur, Contracts, § 315 et seq.) Defendants’ contention that there has been erosion to their property, and *1031 consequently they do not have "at least three acres”, is sufficiently countered by the guaranteed survey and the testimony of the surveyor.
Finally, defendants consented to and approved a "Map of Todem Estates” which contained a subdivision of the 20 acres, including the dimensions and boundaries of defendants’ three acres. Defendants claim that the court compelled them to consent. However, contrary to this assertion, the stipulation of settlement, voluntarily entered into before the court "compelled” them to consent, clearly provides "that the defendants agree to sign a subdivision plat approved by the Planning Board.”
Ill: TAXES AND INTEREST
The Agreement provides that "as a condition to the conveyance of the seventeen acre parcel * * * the first party [plaintiff] shall * * * pay to the second party [defendants] the apportioned taxes with interest * * * on the said taxes at 1V2% over the then prime bank rate.”
Defendants interpret this condition to mean that plaintiff has to reimburse defendants for the taxes on the 17-acre parcel, and, in addition 1 Vi% interest over the prime interest rate "as ascertained on the date of the closing” which will be some time in the future. Defendants rely on the phrase "then prime bank rate” to support their position. Plaintiff states that since defendants have not paid any taxes on the property, although there were two court directives to that effect, and that defendants have refused to permit plaintiff to exercise the option, plaintiffs should pay interest at the prime bank rate existing on December 10, 1971, the last day of the time in which it could exercise the option. In other words, defendants cannot willfully delay the closing in order to reap additional interest.
There was no evidence presented on this point to assist the court in ascertaining what the parties intended by this condition. (See the previous discussion concerning the parol evidence rule on ambiguous contracts.)
On May 16, 1973, the court ordered defendants "to make payment of any tax lien or arrearage effecting the premises”, and this order was affirmed by the Appellate Division (Todem Homes v Freidus, 43 AD2d 666). On October 17, 1974, the court ordered defendants to pay "any and all tax liens” within *1032 one week from the date hereof. To date, defendants have not obtained a stay of either order, and the taxes for the entire parcel are approximately $100,000.
Plaintiff was unable to exercise the option within 30 months because of the defendants’ course of conduct. Therefore, on December 7, 1971, the option was extended to February 23, 1972, and later to August 31, 1973. Plaintiff exercised its option and defendants have failed to appear at two closings.
The court concludes that both parties contemplated that, if plaintiff exercised its option within 30 months, the closing would be soon thereafter. Defendants cannot prevent plaintiff from exercising the option, which mandated two extensions, and now assert that they should receive interest from plaintiff at the prime interest rate at a closing some time in the future. They cannot profit from their wrong. Defendants, because of their persistent course of conduct in not permitting plaintiff to exercise its option, may have committed a tortious and wrongful act. (Rich v New York Cent. & Hudson Riv. R. R. Co., 87 NY 382.)
The court, therefore, holds that the plaintiff must reimburse defendants for the taxes on the 17 acres, from June 10, 1969 to December 10, 1971, allocated at the rate of 24.58% of the total taxes, with interest at 63A% (the prime bank rate on December 10, 1971, the expiration of the option period was 5iA%).
IV: ATTORNEY FEES
The Agreement provides that plaintiff shall reimburse defendants for certain attorney’s fees.
The first provision is that plaintiff "shall pay to the second party [defendants] all her costs and expenses for reasonable attorneys fees in connection with the sale of the seventeen acre parcel.” Both sides have stipulated that a reasonable fee for the conveyance would be $750, and the court so holds.
The troublesome clause is that, "the first party shall, at its own cost and expense, make all filings and applications for the partition or subdivision of the seventeen (17) acre parcel * * * [and] all such consents as may be required by competent authority shall be executed by the second party [defendants], but such approval shall not be unreasonably withheld, the reasonable cost of such attorney’s review to be borne by the first party [plaintiff] * * * the second party, shall in no wise *1033 hinder nor impede its [the subdivision] implementation, except that the second party shall be entitled to protect and defend her own interests.”
Defendants submit a bill for the services of their attorney in the sum of $17,086.15, and their attorney testified to its computation. They justify the amount upon the grounds that defendants required the services of an attorney to review the partition or subdivision of the 17 acres, and to defend them in action brought by plaintiff to have the court determine whether or not defendants unreasonably refused to consent to the subdivision map. They state that since the action was terminated by a stipulation whereby plaintiff modified the map, they did not unreasonably withhold their consent.
Plaintiff opposes this amount as unreasonable and requests the court "to consider reasonable attorney’s fees only for procuring the needed consents and not the unwarranted * * * litigation.”
A review of the procedure in subdividing undeveloped land is needed to ascertain the amount of attorney’s fees to be borne by plaintiff as provided in the contract. (Again the court has no evidence of the meaning of this condition.)
Preliminarily, section 335 of the Real Property Law and section 179-k of the former Village Law discuss the procedures for subdividing real property in a village in Suffolk County. Both laws require the approval of the planning board of the village in order to file a map in the Suffolk County Clerk’s office.
Ordinance No. 15 of the Incorporated Village of Lloyd Harbor states that in order to have the planning board consider whether or not to tentatively approve a plan to subdivide a parcel of land into three or more parcels, a preliminary map must be submitted by the "developer or his authorized agent”.
Plaintiff, in January, 1970, submitted a preliminary map to the defendants’ former attorney and to the village engineers for comments on any proposed revisions. Defendants did not make any revisions and plaintiff then forwarded a "consent” application to defendants for signature in order to place the application for the subdivision before the planning board. (NOTE: the ordinance only requires the "developer, or his authorized agent” to submit a preliminary map and the map "shall show * * * the name of the developer.” The ordinance *1034 does not require the consent of the owner. However, section 335 of the Real Property Law refers to "owner or agent”.)
Plaintiff filed a second application in May of 1971 (the first one was dismissed without prejudice) and signed it as "agent for the defendant-owner”. The contract between the parties granted plaintiff permission "to do and perform all things necessary to effect the partition or division of the land.”
Defendants, therefore, had the preliminary map for almost a year and a half before the planning board formally considered the application. Defendants objected to the board’s consideration of the application on the jurisdictional ground that they did not cofisent to it, and because they needed "a further study of the preliminary map” to protect their interest. The board held three hearings (June 10, July 12 and July 20, 1971), and at the last hearing the board gave final approval to the plat.
Article II of Village Ordinance No. 15 permits a preliminary discussion with the board on the relative merits of the proposed subdivision plan, and whether or not modifications are required. The developer then submits a "plat” for approval within six months from the tentative approval. A public hearing is held (art V) and approval of the plat must be made within 45 days (art VI).
Therefore, if defendants in good faith wished to protect their interests and "modify” the preliminary map, they had an opportunity to voice their objections directly to the planning board. Their argument that they did not "unreasonably” withhold their consent because the court action terminated with a stipulation whereby plaintiff modified the preliminary map, is untenable. The Agreement speaks in terms of "consents as may be required by competent authority” (i.e., the consent to submit the preliminary map to the planning board), and that the "second party shall in no wise hinder nor impede” the implementation with "respect [to] the partition or subdivision” of the 17-acre parcel. Defendants did "hinder” and "impede” the implementation of the subdivision. They had a right to "protect their interests” and they could have done so before the planning board.
The court determines that the parties’ intention with respect to plaintiff paying the "reasonable cost of the attorney’s review” encompasses the work performed by their attorney up to July 20, 1971, the date that the planning board gave final approval to the plat.
*1035 Defendants’ attorney testified that his rate of compensation was $43 per hour and plaintiff does not claim it is unreasonable. Defendants have submitted a detailed statement of the computation of the fee. The court has reviewed it and holds that according to the terms of the Agreement, plaintiff shall reimburse defendants in the sum of $3,106.90, the reasonable cost of the attorney’s review of the "consents”.
V: CONCLUSION
The court, after review of the testimony elicited and the exhibits presented at the hearings conducted on November 8, 1973, and commencing on July 25, 1974, hereby vacates the order dated April 22, 1974, and grants plaintiff’s motion to compel the Sheriff to convey the optioned land to the following extent:
(1) Plaintiff is adjudged, decreed and awarded specific performance in accordance with the terms and conditions of the memorandum agreement dated June 10, 1969;
(2) Defendants (or either one of them) shall convey the "optioned land” to the plaintiff upon payment by plaintiff of the purchase price plus adjustments and apportionments, if any, and defendants shall sign all necessary papers and documents in connection therewith. Each party shall comply with the terms of the said Agreement and this court’s decision;
(3) The court will fix the date of closing of title in the order to be submitted and plaintiff shall personally serve a certified copy of the order with notice of entry upon Ella Freidus and Jacob Freidus, at least 20 days before the scheduled closing, and plaintiff shall also serve a certified copy of the order with notice of entry upon defendants’ attorney, by certified mail, return receipt requested, at least 20 days before the scheduled closing;
(4) In the event that defendants (or either one of them) do not comply with the terms of the said Agreement and this court’s decision, and convey the said "optioned land” to plaintiff at the closing, a referee will be appointed to compute the amount due to defendants including all adjustments and apportionments, if any, pursuant to the said Agreement and this court’s decision, and the Sheriff of Suffolk County shall convey the "optioned land”. Plaintiff shall then submit an affidavit to this effect and an order for the court to schedule another closing and for the appointment of a referee to *1036 compute and the Sheriff to convey. The referee shall make a motion to the court to fix his legal fee and the fee of the Sheriff, and the amount so fixed shall be paid by the defendants;
(5) Plaintiff shall pay to the Dock Hollow Road Association by certified check the amount, as determined by the Association, of defendants’ maintenance charges for use of the road from June 10, 1969, to the date of the closing;
(6) Plaintiff shall furnish to defendants a document or documents evidencing title insured access over Dock Hollow Road free of all maintenance charges for defendants’ three-acre parcel;
(7) The survey of the "three acre parcel” complies with the description contained in the Agreement and shall be furnished to defendants at the closing, or to the referee, if necessary;
(8) Plaintiff shall pay, by certified check, its share (at the allocated rate of 24.58%) of the taxes on the entire property directly to the proper authorities, and it shall receive an adjustment for this amount at the closing. The amount of the said taxes shall be computed for the period June 10, 1969 to December 10, 1971, exclusive of interest and penalties (the order shall contain the precise figure);
(9) Plaintiff shall pay, by certified check, to defendants an amount covering interest at the rate of 63A% on the figure ascertained in paragraph 8 (the order shall contain the precise figure);
(10) Defendants shall pay, by certified check, the remainder of the taxes due as of the closing (including all interest and penalties) directly to the proper authorities;
(11) Plaintiff shall pay, by certified check, to defendants the sum of $3,106.90 to cover reasonable attorney’s fees.