ALLSTATE INSURANCE COMPANY,
Plaintiff,

v.

WHITE METAL ROLLING & STAMP-
ING CORPORATION, Defendant.

No. 76 C 1273.

United States District Court,
E. D. New York.

March 8, 1979.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City (Marvin Wexler, New York City, of counsel), for plaintiff.

Reboul, MacMurray, Hewitt, Maynard & Kristol, New York City (Howard G. Kristol, New York City, of counsel), for defendant.

## MEMORANDUM AND ORDER

NICKERSON, District Judge.

Plaintiff has moved for summary judgment dismissing the counterclaim and striking the fourth defense in this action. Defendant has cross moved for expenses incurred in defense of the motion.

The complaint claims premiums allegedly due under a contract of product liability insurance entered into in May 1963 and renewed annually for nine years. Defendant's answer denied that defendant owes any premiums, asserted as a fourth defense that plaintiff is not entitled to that part of the so-called "retrospective premiums" based on its expenses for outside, as opposed to house, counsel, and counterclaimed for alleged premium overcharges based on the outside counsel expenses.

The formal contract provides for two layers of insurance with a different premium for each. For the first layer, covering losses up to $15,000 for each specified claim, the contract provides for a "retrospective premium" to be determined after the fact on the basis of plaintiff's cost of disposing of the claim. For the second layer of insurance, covering losses from $15,000 to $300,000, a fixed premium is stated. Plaintiff claims that defendant has not paid some $700,000 of the retrospective premiums.

A "Retrospective Premium Agreement" contained in Endorsement Number 1 prescribes the manner of calculating the retrospective premium. In substance it is based on the amount plaintiff pays to claimants plus the amount of its "allocated loss expense" in disposing of the claims. These two amounts are defined as "loss", limited to $15,000 with respect to any one accident. The retrospective premium is calculated by dividing the "loss" for each claim by the specified divisor, that is, by .70 for the first $10,000 of loss and by .93 for the next $5,000 of loss.

The parties agree that fees and expenses properly incurred for outside counsel are included in the term "allocated loss expense". They differ as to the circumstances under which the insurance contract contemplated that house counsel would be used.

Defendant says that prior to the execution of the formal contract and thereafter plaintiff represented to defendant, and agreed both in writing and orally, that plaintiff would use its nationwide network of house counsel wherever possible and outside counsel only rarely if ever. Plaintiff evidently made considerable use of outside counsel, and, since the expenses of house counsel were not includable in "allocated loss expense", the retrospective premiums would have been substantially less had plaintiff not used outside counsel so extensively.

Defendant contends that this promise to make sparse use of outside counsel was plaintiff's chief selling point and the main reason why defendant agreed to the insurance contract. Indeed, defendant claims that for that very reason it switched its insurance to plaintiff from another insurance company not having a comparable widespread organization of inside counsel.

There is no express provision in the formal contract or subsequent endorsements or amendments which sets forth these promises. Defendant relies on correspondence and oral statements predating and postdating the formal contract, all of which are said to constitute the agreement as to house counsel and, together with the executed form, to comprise the entire agreement.

Plaintiff urges that none of this may be considered, that the contract is an integrated agreement, and that by reason of the so-called parol evidence rule a determination of the parties' agreement as to the expenses includable in calculating the premium must be made exclusively by reference to the terms of the formal contract.

Paragraph 18 of the printed section labelled "Conditions" contains a clause providing that "this policy embodies all agreements existing between [insured] and the company or any of its agents relating to this insurance", and paragraph 15 permits the waiver or alteration of its terms only by endorsement issued to form a part of the policy. The "defense" clause recites that plaintiff shall defend any suit against defendant but permits plaintiff to "make such investigation, negotiation and settlement of any claim or suit as it deems expedient." Plaintiff asserts that this clause, as commonly understood, gives plaintiff absolute control over the defense including the choice of counsel.

Plaintiff argues that the formal contract requires defendant to pay a premium based on whatever expenses plaintiff incurs for counsel and permits plaintiff to use, and obtain reimbursement of the expenses for, whatever outside counsel it retains irrespective, presumably, of their cost, of the seriousness of the claim, or of the availability of house counsel, and that any proof, written or oral, inconsistent with this interpretation is barred by the so-called parol evidence rule.

If plaintiff's argument were to be accepted, an insurer could inflate the retrospective premiums payable to it by the lavish use of high priced counsel in every case no matter how trivial and whether or not house counsel was available. Yet this can hardly have been contemplated by the parties. However the "defense" clause has been interpreted in instances where the insurer absorbs the lawyer's bill, it would hardly be fair to read it as permitting the infliction on the insured of whatever legal costs, however unreasonable, the insurer chooses (up to the limit for any one accident).

The formal contract contains nothing which requires the result urged by plaintiff. The events which gave rise to the formal contract and the good sense of the relationship between the parties suggest that at least under some circumstances defendant would not be charged for outside counsel. No language in the formal contract explicitly states what those circumstances are to be.

■ This is no occasion to rehearse the "subtle difficulties" of the so-called parol evidence rule [Thayer, *A Preliminary Treatise on Evidence* (1898) 390] or to reassess its merits. *See Zell v. American Seating Co.*, 138 F.2d 641 (2d Cir. 1943), reversed, no majority as to parol evidence issue, 322 U.S. 709, 64 S.Ct. 1053, 88 L.Ed. 1552 (1944). The long recognized truth is that words in a document always need interpretation and that all the circumstances must be considered which go to make clear the sense of the words. IX *Wigmore on Evidence* § 2470. An exception is made where those circumstances include expressions by a party of his intentions with respect to the subject of the document. The law has supposed that such utterances, were they allowed to compete with the language of the document, would be too apt to dominate and would present too strong a temptation to abuse. *Id.* § 2471.

■■ But that exception has itself an exception fully established in New York. In this state, even where there is an "integrated" contract, extrinsic evidence of declarations of intention are admissible to resolve an ambiguity or equivocation. *Concoff v. Occidental Life Insur. Co. of Cal.*, 4 N.Y.2d 630, 176 N.Y.S.2d 660, 152 N.E.2d 85 (1958). *See also* IX *Wigmore on Evidence* § 2472 and 1977 Pocket Supplement and cases cited.

The formal contract in the case at bar is equivocal. It contains no words explicitly describing the circumstances in which defendant might be charged for outside lawyers. The extrinsic declarations which the defendant asserts it will adduce will not come into competition with the words of the formal contract but will merely serve to interpret its terms.

Plaintiff argues also that if the formal contract is thought to be silent on the issue of the use of house counsel, extrinsic evidence may not be used to add a novel term, citing *Fogelson v. Rackfay Const. Co.*, 300 N.Y. 334, 90 N.E.2d 881 (1950). There the court refused to supplement the terms of a standard lease with extrinsic proof of an undertaking by the landlord to provide his tenants with bus service. The lease contained no suggestion of such an obligation, and the court held that such an undertaking would so closely touch the landlord-tenant relationship that it would have been included in the written lease if intended as part of it. There was no equivocal term in the lease to require interpretation.

But here there is no attempt to add an additional term. The subject of outside counsel is dealt with in the formal contract, and the language is ambiguous as to the result. Extrinsic evidence is proper not to add a new obligation but to clarify existing terms.

Plaintiff's motion is therefore denied. Defendant's motion is denied. Plaintiff's motion is not so lacking in merit as to require the imposition of expenses on plaintiff.

So ordered.