■ JOHN J. TODARO, Appellant, v ELISABETH J. TODARO, Respondent.— Order and judgment, Supreme Court, New York County, entered February 29, 1980, unanimously modified, on the law and facts, to the extent of deleting so much of the third decretal paragraph as provided for weekly child support payments, and, as so modified, affirmed, without costs. The appeal is from an order and judgment granting custody of a child to her mother in Chicago, with monthly visitation by her father there, monthly visitation also here in New York, as well as liberal vacations with the child's father in New York during summer and holidays, all travel expenses to and from New York to be borne by the mother. The parties were married in July, 1966, and the child Christine was born nearly four years later. The father moved out of the family residence in Brooklyn in September, 1977, allegedly to take up residence in Manhattan with a lady friend. The mother's efforts to save the marriage through joint counseling terminated when the father ceased attending the sessions. Pursuant to informal agreement between the parties, Christine continued to live with her mother, with liberal visitation from her father who paid half of Christine's private school expenses and gave the mother $100 per week toward support of the child. The father is a bank vice-president, earning $42,500 per year. The mother is a Swiss national, employed part time as a consular official, earning a tax-free income of about $14,000 per year. In the spring of 1978 the mother met Schuler, another Swiss national who also happened to be a bank vice-president here in New York. Their relationship developed into an agreement to marry as soon as the mother could finalize her divorce from the father. The following spring Schuler was offered an opportunity to transfer to a bank position in Chicago. He told the mother he would take the job only if she would move to Chicago. She agreed, in the belief and expectation that Christine would accompany her on this move. The father was so advised. Two condominiums were purchased in Chicago (in contemplation of the fact that the divorce proceeding would not soon be resolved). The mother secured her own job transfer to the Swiss Consulate in Chicago, and preparations were made for her move in August, 1979. There is disagreement as to when and whether the father was properly notified that the move was imminent and as to its effect on his continuing visitation rights. Just on the eve of the mother's departure, the father obtained a show cause order restraining the mother from removing Christine from the State of New York. Having little alternative, with the moving vans about to arrive, the mother felt compelled to go on alone to Chicago. Thereafter, until the trial of this proceeding in January, 1980, Christine has resided with her father in New York, with whom she remains today pending the resolution of this appeal. The trial court was presented with the conflicting testimony of two psychiatrists who did agree that Christine had somehow survived this ordeal so far to emerge as a well-balanced child with strong feelings of love, affection and concern for both parents. Early in the proceedings Christine had expressed a desire to go with her mother, but in a later interview with the Judge, having most recently resided with her father for several months, the nine year old indicated she would rather remain with him. The trial court was, of course, bound to consider but not required to accept the child's preference of the moment in determining what would be in her best

interests overall (*Dintruff v McGreevy*, 34 NY2d 887; *Strahl v Strahl*, 66 AD2d 571). Christine is clearly compatible with either parent. Up until August, 1979 she had lived continuously with her mother. Although the child's relationship with Schuler may have had the potential for friction, the trial court pronounced him fit as a potential stepparent. No basis is shown for the father's contention that the mother is somehow morally corrupt for developing a relationship with Schuler. On the other hand, Christine had resided continuously with her father in a compatible surrounding for about five months at the time of trial, and we cannot ignore the fact that as of this moment she is presumably still in his custody. Although arguments may be made on both sides for custody based on continuity of environment, the Trial Justice found: "The success of the established mother-daughter relationship and the child's need for continuity of that primary relationship suggest that being in the custody of her mother would best serve Christine's needs." The removal of the child from New York, where she has spent all of her formative years building friendships at school, and transplanting her to strange surroundings in a far-off city, will no doubt be somewhat traumatic, but perhaps not more so than the trauma of the stormy separation of her parents which she has apparently weathered so well over the past two and a half years. Waiting for her in Chicago is the familiarity of her mother, the prospect of a new school near home, and the knowledge that her father is only hours away by plane, seconds away by telephone. The distance of half a continent no longer presents an insurmountable obstacle in the way of appropriate resolution of child custody disputes. Modern air transportation has made it easier to commute to New York City from Chicago than from some of the "bedroom" communities of the greater metropolitan area. From what the record reveals, Christine appears capable of making this monthly odyssey between the cities with a minimum of wear and tear. The mother's reason for moving to Chicago, although noncompelling, was nonetheless valid (see *Matter of Susan "KK" v Rudolfo "KK"*, 39 AD2d 792, judgment on remand affd 30 NY2d 893), and in furtherance of a new and restabilizing phase in her life, which can only redound to the benefit of the child. Paramount is the best interest of the child (*Matter of Nehra v Uhlar*, 43 NY2d 242). Continuity of the first custody awarded in litigation or by voluntary agreement is a factor entitled to great weight so as to avoid disturbing a good relationship. There was such continuity and good relationship while Christine was with her mother. The circumstance that the mother was impelled to move to Chicago should not provide an insuperable bar to continuing the mother's custody. On balance, then, the best interests of the child dictate that custody of this child be awarded to the mother in Chicago, with visitation as provided. Trial Term had before it sufficient evidence from which to reach this conclusion. It may be that a guardian ad litem might have presented the court with still another viewpoint. However, the failure to make such an appointment was not an abuse of discretion. There was apparently no request for such an appointment. The current suggestion that an independent psychiatrist should have been appointed stands on the same footing. However, in pursuit of the paramount objective of the best interests of the child, the parties should have availed themselves of the independent advice and services offered through the facilities of the Family Counseling Unit at Special Term, available on mutual consent (*Matter of Schloss v Schloss*, 63 AD2d 898). The trial court also awarded the mother child support of $100 per week, although the sole issue before the court was custody. Child support is at issue in the divorce proceeding currently in separate litigation. While the

father had informally agreed to pay the mother that sum for child support prior to her move to Chicago, the award below was made without benefit of evidence which he intends to introduce in the divorce proceeding on this question. The father does not contest the award with regard to his responsibility for Christine's major medical and dental expenses, as well as half of her private school tuition through sixth grade. This is a child custody proceeding brought pursuant to section 240 of the Domestic Relations Law which authorizes directions for child support incidental to the award of custody. However, under the circumstances here the question of monetary child support should have been referred to the trial court in the pending matrimonial action. This is particularly so in the absence of sufficient financial testimony and data and the usual forms setting forth the expenses and obligations of the parties, as required by section 250 of the Domestic Relations Law. Moreover, neither party's papers requested child support. An unconditional order of child support at this stage of proceedings and on this record, coupled with removal of the child from the father's custody and from the jurisdiction, might be prejudicial to him (see *Strahl v Strahl, supra*). Concur—Birns, J. P., Fein, Sandler, Markewich and Carro, JJ.