OPINION OF THE COURT
William L. Underwood, Jr., J.
In this postdivorce proceeding, the custodial parent (plaintiff mother) seeks “to relocate and move the permanent residence of the children to a location within the continental limits of the United States, as was provided in the separation agreement” and, as a consequence, defendant’s visitation will be curtailed. It is to be noted that defendant does not seek a change in custody based upon her attempt to relocate.
The parties entered into a separation agreement on March 26,1976. The agreement provides that plaintiff was to have custody of the two infant issue (the third child is emancipated) and section (q) of article 9 provides, in pertinent part: “The ‘Mother’ covenants that she shall not remove the permanent residence of the ‘Children’ to a distance of more than 100 miles radius from the County of Nassau residence without the ‘Father’s’ consent, except for the remarriage of the ‘Mother’ and in that event, only within the continental limits of the U.S.” (the court has underlined the words that were handwritten to the typed agreement).
*184 Plaintiff has remarried and she lives in Upper Brookville, New York. Defendant has also remarried and he lives in St. James, New York.
A hearing was held and plaintiff and her husband, Jonathan McCrensky, testified that they started their own business in marketing and advertising under the name of McCrensky Associates in 1976. McCrensky testified that he has been involved in the advertising field since 1961. He stated that during the years 1977 to 1980, the firm’s billings were between $600,000 and $700,000 and that for the year 1981 the billings dropped to $42,000. He further testified that his specialization is in the area of active sportswear and that in New York most of his clients had cut their budgets for advertising. McCrensky testified that he has been unsuccessful in soliciting new business in New York.
McCrensky continued that he solicited employment outside of the New York area and that he received two written offers. He could not accept the offers because he “had received a restraining order preventing [him] from leaving the area or the threat to serve a restraining order if we were going to leave the area”. He continued that his ability to even approach people for employment was hampered because of a restraining order or the threat of a restraining order. In other words, he could not give his prospective employer a definite answer. McCrensky testified that the salary of the offers was “approximately $75,000 a year plus benefits and whatnot”. He also testified that he has not taken a salary from his business in about a year and a half. McCrensky concluded that “the industry of active wear and tennis wear * * * has shifted to both the Southern California and Miami area. Manufacturing is being done there. The use of the products, the active wear being sold in greater quantities down there. Therefore, those particular areas are greater in the active wear, which is one area that we have expertise in”.
Plaintiff testified as to her husband’s business and the decrease in income over the last two years. Plaintiff also testified as to her husband’s employment opportunities outside of the New York area.
*185 Plaintiff testified concerning the separation agreement dealing with the residence of plaintiff and the children. Plaintiff testified that the changes were made because “I knew that if I were to remarry that I would have to go where my husband was, wherever that was, and that would be the one thing in my life to be very, very important to me, is to be able to follow my husband wherever he had to go”.
She also testified that defendant loves the children and that they have had a continuing visitation relationship with defendant. Plaintiff stated that she did not take any steps to inhibit the children’s continuing relationship with defendant and that “I support their relationship”. Plaintiff frankly admitted that defendant has always made the child support payments.
Finally, she stated that plaintiff, her husband and defendant met at a diner to discuss plaintiff’s leaving the State of New York. Defendant would not consent to the move and this proceeding ensued.
Defendant testified that he “has always been extremely close” to his infant son. He stated that “I have tried to maintain a close relationship” with his daughter but that she does not visit him as much as his son. He continued that it would be “very detrimental” if plaintiff and the infant issue left the State of New York.
Defendant testified that the purchase price of his house was $200,000. He stated that he owns his own business and that “I have ownership of a small company that owns several pinball machines”.
Defendant continued that he has paid child support and that he is not in arrears. He testified that the subject article of the separation agreement was changed after a lengthy discussion to reflect the fact that plaintiff would not move to a distance of more than 100 miles from her residence unless she remarried someone from out of State. In other words, she could only move out of State at the time of her remarriage, not sometime thereafter.
The court was reluctant to have the infant issue testify because the court did not want to interfere with the relationship between the parents and the children and that the *186 children should not be put in a position to choose between parents. The children testified and the attorneys were careful in limiting their quéstions.
Debra Schweitzer, 17 years old and the middle child, testified that she was aware that her mother and stepfather were planning to leave New York and that she would not see her father every week. She stated that “I’d be willing to go” with her mother and stepfather to whatever area of the country they choose to go to. She stated that she saw her father “mostly on holidays and, you know, just maybe once a month or something. Not even”. Debra candidly stated that she stopped seeing her father because she was jealous over the attention that he gave to her brother and that she has a social life. Debra testified that she loves and cares for her father.
Robert Schweitzer, 13 years old, testified that he wanted to go with his mother and stepfather if they moved out of the New York area and that because of the relocation he might see his father for longer periods of time. He also stated that he wanted to live with his sister. He testified that he usually saw his father “once a week. Sometimes every two weeks” and that he enjoyed visits with his father.
At the outset, it has been stated in Munford v Shaw (84 AD2d 810, 810-811), that “[rjecent cases involving custody and visitation disputes have held that a geographic move will not be permitted when it would effectively deprive a parent of regular access to the child (see Weiss v Weiss, 52 NY2d 170; Daghir v Daghir, 82 AD2d 191; Strahl v Strahl, 66 AD2d 571, affd 49 NY2d 1036). Although some cases have permitted such a move (see Cmaylo v Cmaylo, 76 AD2d 898; Todaro v Todaro, 76 AD2d 816; Martinez v Konczewski, NYLJ, March 5, 1981, p 14, col 3), each case presents a unique set of facts and a case-by-case determination is necessary”.
The appellate courts can furnish guidelines for the determination of whether or not a party should be permitted to relocate but because of the individual nature and circumstance of each case a rule made in cement is not practical and unwise.
*187 Defendant cites the recent cases of Eschbach v Eschbach (56 NY2d 167) and Freiderwitzer v Friederwitzer (55 NY2d 89) for the proposition that this court is not bound by the language of the separation agreement concerning custody because there was no evidence taken by the trial court on the question of custody (the provisions of the agreement were incorporated in the judgment of divorce) and the “best interests” of the children should govern whether or not plaintiff should be permitted to move out of State.
However, those cases dealt with the question of a change in custody and not, as the case at bar, with whether a custodial parent can be permitted to relocate. The court will, however, apply the standard of “best interests” of the children (Martinez v Konczewski, 85 AD2d 717, cross app dsmd 56 NY2d 592) as possibly the overriding factor to be utilized in a change of location case together with compelling financial, educational, employment and health considerations (Daghir v Daghir, supra; Matter of Burkart v Montemarano, 72 AD2d 561).
The court has carefully evaluated the testimony of the parties and the children and, under the facts presented, determines that plaintiff and the infant issue can relocate outside of the New York area.
Several observations should be noted.
There does not appear to be any malicious purpose in plaintiff’s proposed move and it does not appear that the relocation out of State was to prevent visitation with defendant. In fact, plaintiff showed good faith by discussing the relocation with defendant and she, rather than sneak away in the dead of night, brought this action to have the court determine whether or not she could leave the State (Martinez v Konczewski, supra; Kovesdy v Hines, 75 Misc 2d 644; cf. Daghir v Daghir, supra). In fact, plaintiff’s husband did not take two job opportunities until this proceeding would be decided. Plaintiff and defendant have not shown that there is any animosity between them and they have maintained and encouraged a parental relationship between each parent and the children. Plaintiff has agreed to liberal visitation by defendant and the children.
*188 Plaintiff and her husband have shown sufficient financial considerations and the prospect of better employment opportunities outside of the New York area. Plaintiff’s husband has supported his stepchildren and he has indicated that this move is in the best interests of the family including, of course, the stepchildren (Cmaylo v Cmaylo, 76 AD2d 898; Dean v Dean, 79 AD2d 876; Todaro v Todaro, 76 AD2d 816; Matter of Burkart v Montemarano, supra; Kovesdy v Hines, supra; cf. Daghir v Daghir, supra; Priebe v Priebe, 81 AD2d 746).
Although the court was reluctant to have the children testify, as previously noted, it could consider but is not required to accept the children’s preference in remaining with their mother and relocating in determining what would be in their best interest (Dintruff v McGreevy, 34 NY2d 887; Strahl v Strahl, supra; Todaro v Todaro, supra).
Although of limited significance, the relocation is not at variance with the terms of the separation agreement (Martinez v Konczewski, supra; Cmaylo v Cmaylo, supra; Kovesdy v Hines, supra; see, also, Weiss v Weiss, 52 NY2d 170, 174, supra).
This court, on a previous occasion, commented on the construction of contracts as follows:
“The construction or interpretation of a contract is determination of the meaning attached to the written words which comprise the contract. Where the language of a contract is unambiguous and the words are plain and clear, conveying a distinct idea, there is no occasion to resort to other means of interpretation, for effect must be given to the intent as indicated in the language itself (Matter of Western Union Tel. Co. [American Communications Assn.), 299 NY 177). Therefore, the words and phrases used in particular contracts are to be interpreted in accordance with the meaning with which they have been invested by the parties.
“On the other hand, when a written contract is unclear or ambiguous in its meaning or application, parol and other extrinsic evidence is admissible to explain or interpret the writing (Concoff v Occidental Life Ins. Co. of Cal., 4 NY2d 630). The preliminary question to be resolved is whether or not there is an ambiguity.
*189 “The traditional view is that the search for the ambiguity must be conducted within the Tour corners’ of the writing, unaided by any reference to external circumstances. (See 30 Am Jur 2d, Evidence, § 1066.) However, this court will adopt the more modern and enlightened view, and accept any evidence of the parties’ negotiations and of any other relevant external circumstances in order to ascertain whether a written contract is ambiguous. (Ambiguity in Contracts — Extrinsic Evidence, Ann. 40 ALR3d 1384, § 4, and cases cited therein; Restatement, Contracts, § 242.) The ultimate goal of the judicial system is to ascertain the truth and any evidence which aids the court in its search should be admissible; the weight to be given to the evidence is for the court or a jury. Contrary to plaintiff’s position the court is not rewriting the contract, but looking for the parties’ intention.” (Todem Homes v Freidus, 84 Misc 2d 1023 [Underwood, J.], mod on other grounds 55 AD2d 640, order affd 61 AD2d 893.)
In this case, the separation agreement is unambiguous and the words are plain and clear and “effect must be given to the intent as indicated in the language itself”. The separation agreement states that the “Mother” can remove the permanent residence of the “Children” within the continental United States if she remarried. It does not state when the relocation must occur and it does not state, as defendant contends, that plaintiff could only relocate if she married someone from out of State and at the time of her remarriage immediately relocated out of State. In fact, defendant candidly admitted that he knew plaintiff was dating Jonathan McCrensky, who lived in New York. If defendant wanted his position to govern then he could have used language to that effect. As the agreement was written it permits plaintiff to relocate any time after her marriage.
Finally, and not of least concern to the court, is that a father’s right to visit with his children is a precious right deserving the protection of the court (Matter of Burkart v Montemarano, supra; Entwistle v Entwistle, 61 AD2d 380). Unfortunately, this court cannot issue a Solomon-like decree agreeable to the children and the parents but a choice has to be made although it is a very difficult one.
*190 The court feels that plaintiff and her husband have presented legitimate reasons for the relocation. If the stepfather is in a better position financially then it naturally inures to the benefit of the children. Of course, the love, affection and attention given by the father to the children is important. The children have managed under the present conditions and they are more resilient than adults give them credit. They will rebound from the relocation because they will visit with their father less often but for a longer period (i.e., summer, vacations, holidays, etc.).
In conclusion, in view of the fact that the father is financially secure and the mother has agreed to liberal visitation and the relocation is in the “best interests” of the children, the court determines that plaintiff can relocate her permanent residence and that of the children to anywhere within the continental limits of the United States provided defendant is afforded very liberal visitation. If his request for visitation is reasonable, plaintiff shall not withhold it. The parties shall agree to visitation and if they cannot agree they may submit written recommendation to the court so that it may fix visitation.
All motions are decided in accordance with this decision and it is rendered pursuant to CPLR 4213 (subd [b]).