OPINION OF THE COURT
Saul Moskoff, J:
This proceeding brought by petitioner father pursuant to article 6 of the Family Court Act sought custody of the two children of the marriage. Prior to the commencement, during the pendency of this proceeding and apparently, at this time, the marital difficulties and the status of the children were and are the subjects of pending litigation in the Superior Court of Connecticut, of which State the parties had been residents for at least three years prior to the commencement of the dissolution proceeding there.
Albeit the respondent mother professes lack of knowledge as to the precise status of the Connecticut proceedings and the legal effect of the orders entered therein, the case presents the issue of removal of children from one jurisdiction to another, possibly to avoid an adverse determination in the original State and with the hope of obtaining a more favorable determination in the State to which the children are removed. Essentially this is another form of fragmentation or forum shopping. (See Matter of Lo Casto v Lo Casto, 45 AD2d 712; Matter of Doe v Doe, 50 Misc 2d 255; Matter of Lazar v Lazar, 61 Misc 2d 36; Matter of Hughes v Hughes, 56 Misc 2d 781; Matter of Lopez v Lopez, 63 Misc 2d 252; Matter of Diane W., NYLJ, Aug. 1, 1974, p 12, col 6; Matter of Florence B., NYLJ, Feb. 8, 1977, p 12, col 4.)
Moreover, the conduct of the mother in removing the children from Connecticut to New York is another example of the recently increasing phenomena of what has come to be known as "child snatching,” a practice condemned by our courts. (People ex rel. Weissman v Weissman, 50 AD2d 989; Matter of Bennett v Jeffreys, 40 NY2d 543; Matter of Shalit [Shalit], NYLJ, Nov. 1, 1977, p 7, col 2; Matter of Nehra v Uhlar, 43 NY2d 242; Entwistle v Entwistle, 61 AD2d 380; Matter of Anonymous, 92 Misc 2d 280.)
THE HISTORY AND CHRONOLOGY OF THE EVENTS
The subjects of this proceeding are Angeline, born October 6, 1969, and Alicia, born October 19, 1974. It is clear that the marital res was and still is the State of Connecticut, the *1112 record indicating that the family resided there for at least three years prior to the commencement of the dissolution action.
The action for dissolution of the marriage was brought in the Superior Court of Connecticut by the mother in March, 1977. On April 27, 1977, the Superior Court awarded temporary custody to the mother with visitation to the father. At that time, the matter of custody was referred to the Family Relations Division of the Superior Court for an investigation and report. Such report, recommending that custody be awarded to the father, was thereafter filed with the court and the matter referred to Justice Patrick B. O’Sullivan, Referee of the Superior Court.
On November 17, 1977, a hearing of three days’ duration was had before Mr. Justice O’Sullivan, following which judgment was entered awarding custody to the father, subject to review in six months.
Thereafter, the mother filed an appeal to the Supreme Court of the State of Connecticut. Extensions of time to file the appeal were granted, the last extension, so far as this court can determine, having been to March 1, 1978.
The Connecticut statutes provide for a stay of execution of judgments for a limited time pending appeal. On November 29, 1977, the father made application to the Superior Court to terminate the statutory stay and on December 22, 1977, Judge William L. Hadden, Jr., of that court terminated the stay.
On December 27, 1977, the mother sought a review of the order terminating the stay in the Supreme Court of the State of Connecticut. That court denied her application on February 2, 1977. She thereafter moved to vacate the denial of her application. That application, as of February 24, 1978, remained undetermined.
In the meantime, and on January 5, 1978, the Superior Court modified the temporary order of April 27, 1977 which had granted temporary custody to the mother by awarding temporary custody to the father.
THE INSTANT PROCEEDING
The father alleges that while the foregoing litigation was in progress, the mother surreptitiously removed the children from Connecticut in the latter part of December, 1977.
On January 10, 1978, the father appeared personally before *1113 this court and filed a petition pursuant to section 651 of the Family Court Act seeking custody of the two children, alleging the removal of the children from the jurisdiction of Connecticut in violation of the judgment of the Superior Court of Connecticut. Based upon these allegations and the father’s testimony, an order to show cause was signed granting temporary custody to the father, returnable on January 31, 1978. Thereafter, on January 11, 1978, on the testimony of the father that the mother was threatening to remove with the children from New York State, a warrant was issued for her to produce the children.
Thereafter, with the assistance of the police department, the custody of the children was transferred from the mother to the father, and the children returned to Connecticut.
Upon the return of the children to Connecticut and to the jurisdiction of their domicile and of the courts in which the proceedings relating to their custody are pending, the father moved to discontinue the instant proceeding. The mother opposes the application to discontinue and seeks affirmative relief awarding custody of the children to her, requiring the father to provide financial support for the children and to pay sums allegedly due the mother under the Connecticut divorce decree or in the alternative to authorize and require visitation by the mother on weekends during the summer months in New York; to require the father "to cease sleeping with his daughters or becoming intoxicated or being intoxicated while in their presence”.
THE QUESTION
Should this court assume jurisdiction of the parties and the subject matter in view of the proceedings had and pending in the State of Connecticut?
FRAGMENTATION AND FORUM SHOPPING
It is abundantly clear on the record before the court that the parties had their "day in court” in the State of Connecticut. They were present with their counsel in what appears to be a hotly contested adversarial proceeding. After testimony and referrals to the court’s auxiliary service units, the Connecticut court reached a determination, obviously displeasing to the mother.
In somewhat critical language, the mother now denounces *1114 that determination. She makes charges of moral misconduct on the part of the father, a charge which she could have presented, if indeed she did not present it, to the Connecticut court. In view of the prior determination, this court must conclude that the Connecticut court found no merit to the mother’s allegations. This court cannot and will not now review these allegations. She describes the Connecticut proceedings as "a farce and a travesty of justice.” She characterizes the jurist who acted as "Referee” as "age 94, who is partially paralyzed from a heart attack, is hard of hearing, doesn’t see very well and constantly drivelled from the mouth, which required his attendant to constantly wipe his mouth.” She complains that he is biased against "modern women” and "should be retired from the bench * * * as he is no longer capable, competent or current with the times.”
Significantly, the papers submitted to this court in this proceeding discuss at some length the evidence adduced in the Connecticut trial in an effort to demonstrate the error of the ultimate determination made there.
What we have here is a blatant effort to relitigate issues which have already been tried in another jurisdiction without any valid claim of lack of due process or lack of jurisdiction or subject matter.
This process constitutes another form of fragmentation or forum shopping, a practice condemned by our courts (see cases cited, supra).
The mother initiated an appeal in the Connecticut judicial system. If indeed error occurred in the trial court in Connecticut, the appellate court in that jurisdiction is the appropriate forum to correct such errors. It would be an invasion of the sovereignty of a sister State if New York were to attempt to de novo determine the issues.
THE UNIFORM CHILD CUSTODY JURISDICTION ACT
The Uniform Child Custody Jurisdiction Act was enacted by the New York Legislature in the 1977 session to be effective on September 1, 1978.
Its promulgation was essentially brought about by the ever-increasing conflict between the States on issues of child custody and visitation and more particularly because of the high incidence of "child snatching,” or the removal of children from one jurisdiction to another, for the purpose of frustrating *1115 decrees or judgments of one State or seeking a more favorable forum in a different jurisdiction.
Legal disputes and decisions relating to full faith and credit and comity became commonplace, and a nationwide drive ensued to devise a more uniform code of laws to thwart the process of parents "taking the law into their own hands,” to effectuate their own sometimes selfish desires often without regard to the best interests of the children.
The Uniform Child Custody Jurisdiction Act (L 1977, ch 493), found in article 5-A of the Domestic Relations Law, has now codified the public policy of this State. Albeit its effective date has been fixed as September 1, 1978, it has been held that courts will implement the expressed public policy prior to its effective date. (Nehra v Uhlar, 43 NY2d 242, supra; Matter of Anonymous, 92 Misc 2d 280, supra; Matter of Shalit [Shalit], NYLJ, Nov. 1, 1977, p 7, col 2, supra.)
Pertinent provisions of the Uniform Child Custody Jurisdiction Act include:
"§ 75-b. Purposes of article; construction of provisions.
"1. The general purposes of this article are to:
"(a) avoid jurisdictional competition and conflict with courts of other states in matters of child custody which have in the past resulted in the shifting of children from state to state with harmful effects on their well-being;
"(b) promote cooperation with the courts of other states to the end that a custody decree is rendered in that state which can best decide the case in the interest of the child;
"(c) assure that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline the exercise of jurisdiction when the child
and his family have a closer connection with another state * * *
"(e) deter abductions and other unilateral removals of children undertaken to obtain custody awards;
"(f) avoid re-litigation of custody decisions of other states in this state insofar as feasible”.
Sections following the foregoing implement the expressed purposes of the act.
On the record before the court, the court finds:
*1116 1. That to assume jurisdiction of the issues herein would encourage, rather than avoid "jurisdictional competition and conflict with courts of other states” in violation of section 75-b (subd 1, par [a]) of the Domestic Relations Law. To sanction the mother’s unauthorized removal of the children would be abhorrent to this State’s policy of avoiding the "rollercoasting” of children. (Matter of Susanne U. NN v Rudolf OO, 57 AD2d 653; Dintruff v McGreevy, 34 NY2d 887; Obey v Degling, 37 NY2d 768.)
2. That the assumption of jurisdiction by New York would not promote co-operation with the other States of the Union and would violate the principle that a custody decree should be rendered in that State which can best decide the case in the interests of the children, contrary to section 75-b (subd 1, par [b]) of the Domestic Relations Law.
3. That Connecticut has closest connections with the family and it is in that State where significant evidence concerning the care, protection, training and personal relationship is most readily available (Domestic Relations Law, § 75-b, subd 1, par [c]).
4. That to entertain this proceeding and to consider the relief the mother seeks would encourage, not deter, abduction and unilateral removal of children from one State to another (Domestic Relations Law, § 75-b, subd 1, par [e]).
5. That to review the proceedings heretofore had in Connecticut would constitute relitigation of a custody decision of a sister State (Domestic Relations Law, § 75-b, subd 1, par [f]).
Accordingly, the application of the petitioner father for discontinuance of this proceeding is granted.
The cross application of the respondent mother for varied forms of affirmative relief, most of which would not be available in any event in a custody proceeding, is denied.