J. Irwin Shapiro, J.
This is an application by the petitioner, former husband of the respondent, for a writ of habeas corpus to restrain her from removing the three infants of the marriage *981 11 from the City and State of New York, to the State of California ” and in which petitioner in the wherefore clause prays that he ‘1 he granted the custody of the three infant children if the said edna denberg persists in her plans to remove from the City of New York to the State of California, and that rights of visitation for the petitioner with his three infant children continue in the City of New York, or that in the alternative if the said edna denberg shall remove from the jurisdiction of the State of New York and visitation thus be denied to your petitioner, that your petitioner, while such children are out of the State of New York with consequent denial of visitation, shall be relieved from making payments for support of edna denberg and the infant children herein, until such time as edna denberg and the three infant children return to reside permanently in the State of New York. ’ ’
There are three children of the marriage, two girls being respectively 19 and 15 years of age and the boy being 13 years of age.
The parties were married on September 13, 1941 in the City and State of New York and their marriage was dissolved on May 30,1961 by a decree of divorce issued out of the First Civil Court of the District of Bravos, State of Chihuahua, Republic of Mexico. The divorce was instituted by the petitioner husband and the respondent appeared therein by her attorney.
It appears from the testimony in the case that since he obtained his decree of divorce on May 30, 1961, petitioner has married a woman who has two children of her own. It is quite apparent to the court that it is that remarriage which lies at the root of the respondent’s desire to move to California and to take the three children with her.
As in many cases of broken homes, the love which formerly existed between the husband and the wife has now turned to bitterness and hatred, and the children have become the unfortunate pawns in the feuding of their parents.
Upon the hearing of this habeas corpus the petitioner father desired to call the children as witnesses. The respondent demurred and the court thereupon suggested that instead of the children being put upon the stand in open court and being made the subject of examination and cross-examination, that they be interviewed separately and privately by the court in chambers and that the court might make his determination not only upon the evidence produced in open court but also upon his reactions garnered from his conversations with the three children. The suggestion of the court was accepted by both sides and was put into the record as a stipulation of the parties.
*982 The court spoke to the children separately at great length in chambers and became convinced from his conversations with them that they were indeed the unfortunate victims of- their parents’ bitterness toward each other. It also became quite apparent from my interview with the children and from the testimony in the case that both parents had a tremendous love and affection for the three children and desired only that which was best for them, but that the respondent in her intense hatred of the petitioner was doing things which inevitably tended to unstabilize the minds of the children and to destroy their comfort and repose.
During the first day of the hearing the respondent on the witness stand gave evidence of her intense dislike of her former husband and her hysterical reaction to his right to see and visit with the children, when she announced, in effect, that the right of visitation by the husband must end, and that if she could not have the children all to herself he could have entire custody of them.
At the conclusion of the hearing, on its first day, when the parties had put in all of the proof which they then desired to interpose, I indicated I was not inclined, if I had the power, to permit the respondent to take the three children to the State of California, there to reside permanently, and thus destroy the right of the three children to have the benefit and the guidance and the love and affection, even though only once or twice a week, of their father.
The proof, as has been stated, shows that both parents intensely love their children and desire only what is good for them. When I asked the respondent on the witness stand what it was that she thought should deprive the father of the right to see and visit with his children, and of their right to get the benefit of his guidance and love and affection, her only complaint, aside from certain alleged moral derelictions on his part, to which I gave and give no credence, was that he spoils the children by lavishing too many luxuries upon them. In view of the $8,000 spent by the father for the boy’s Bar Mitzvah (confirmation), the yacht which he has bought and which the children use, and the automobile which was provided for the use of the older daughter, this charge by the respondent may well have basic merit, but unfortunately it is one of the by-products of our present era where some parents think that the best way to bring up a child is by having him avoid the hard knocks which they themselves experienced and by having him or her brought up in the lap of luxury. I do not feel that this objection is one which was urged by the respondent in good faith, nor is it the kind of *983 extravagance which she opposed when she and the petitioner were living together as husband and wife, but is rather an objection born of the rift between them.
When I indicated at the conclusion of the first day’s hearing that my paramount and sole concern was for the welfare of the children, and that my determination was going to be guided solely by that fact, the attorney for the respondent requested a continuance so that he could produce a psychiatrist. His application was granted and yesterday when the hearing was resumed the psychiatrist testified that the respondent had made visits to him on May 4, 8, 15, 17 and June 9 and June 15, all in this year; that she came to see him for treatment of a nervous condition and that he found her to be suffering from symptoms of an anxiety state with depressing features which was caused by the wrangling, disputations and conflicts arising from her relations with her ex-husband. He stated that the state in which he found her made her impatient, irritable and unhappy with her children and that because of her mental state the children also were becoming emotionally upset and depressed. He stated that on June 15 he saw the three children and that they were all quite tense and upset, and that the boy was particularly agitated, tremulous and anxious, and was only able to express himself with difficulty because he was quite confused. He expressed it as his opinion that the two girls felt that they would like to get away from what he called “ this situation ” and he said that the girls expressed little serious affection for the father, although conceding that the boy expressed affection for both parents. The court questioned the psychiatrist very carefully about the effect on the children if they were deprived of the love, guidance and affection of their father who had seen them regularly every week, and sometimes twice a week, and the psychiatrist admitted that in the ease of the boy, at least, it would be a traumatic experience.
At the continued hearing yesterday, respondent, who had originally opposed the children’s testifying in open court, proposed to call the three children as witnesses. I declined to hear them since it was the respondent who first objected to their testifying, and because it was in violation of the stipulation which had been entered into in open court, and because in my opinion it would not have been in the best interests of the children to be compelled to testify against one or the other of their parents, in the presence of both parties. It should be noted, at this point, that during the entire hearing the children were excluded from the courtroom by me and did not hear the testimony.
*984 I am convinced that my reason for refusing permission to have the children testify was sound. I am further convinced by the testimony of the psychiatrist, whose version of the two daughters ’ views differs greatly from what I had gleaned from them, that if the psychiatrist was correct in his testimony the two girls were subjected to intensive persuasion during the period of the continuance.
The petitioner argues that the separation agreement entered into between him and the respondent, and which was thereafter incorporated in the decree of divorce entitles him under its very terms to specific rights of visitation.
Paragraph 3 of the separation agreement reads as follows:
. “ The.wife shall have custody.of. the children,: subject to. .the following. .. • :
“ (a) The husband shall have the right to have the children spend Sunday of each week with him. If the husband desires such visitation on a Saturday in lieu of Sunday, then he must give the wife 24 hours notice of his intention; In addition to the foregoing, the husband shall be entitled to have the children spend any one other day in the week, which he desires, provided that he give the wife 24 hours notice of his intention so to do.”
Paragraph 1 of the separation agreement however provides as follows: ‘1 The parties may and shall continue to live apart for the rest of their lives. Each may reside, from time to time, at such place or places, and may conduct, carry on and engage in any employment, business or. trade that he or she may deem fit and shall be free from interference from each other, and neither of the parties shall molest the other or attempt to compel the other to cohabit or dAvell with him or by her by any means Avhatsoever. ”
The respondent therefore argues that since under the very terms of the separation agreement she may reside ‘ ‘ at such place or places” — that — “ she may deem fit” she may take the children to the State of California. She further argues that if there had been any intention to limit the right to move herself and the children from the State of New York the agreement should have so stated and that a contrary intention may be draAvn from the fact that in paragraph 11 of the agreement it was provided that: “Nothing herein contained shall be construed to bar or prevent either party from suing for absolute divorce in any court of competent jurisdiction because of any past or future fault on the other’s part.” (Emphasis supplied.)
■ For her contention that a mother has an. absolute right to move out of- the State with her children in derogation of the father’s rights of visitation where the separation gives “ each *985 party the right to reside at such place or places as he or she may deem fit ” and particularly where either party is authorized to go to another jurisdiction to obtain a divorce, the respondent cites Sterns v. Stevans (11 A D 2d 726) and Meiners v. Chinigo (283 App. Div. 1096) both Second Department cases. In my opinion they are completely inapposite to the situation here presented.
There the courts dealt with plenary suits upon the separation agreements, per se, and what the courts there decided was based upon the legal rights of the parties vis-a-vis each other. Here we are not dealing with the legal rights of the parties as between each other, but are rather dealing with the summary jurisdiction, which this court possesses, to make adjudications based upon the health and welfare of children who are its wards and over whom it has jurisdiction.
We are not concerned here with whether or not the former wife could sue the former husband to recover the payments specified in the separation agreement if she should take the children out of the State of New York and to the State of California, nor whether the former husband, as a defendant, would have a defense in such a lawsuit, nor is the court in this proceeding concerned with reforming the separation agreement between the parties. That it clearly may not do (Stoddard v. Stoddard, 227 N. Y. 13; Chamberlin v. Chamberlin, 193 App. Div. 784; Matter of Warren, 207 App. Div. 793; Grossman, New York Law of Domestic Relations, § 411), but this court may, and in fact is charged with the duty of entertaining jurisdiction over the children, present in this State, to do what is necessary in the interest of their health and welfare and this 1 ‘ is not necessarily determined by the legal rights and obligations which subsist between their parents ”. (Hicks v. Bridges, 2 A D 2d 335, 339.)
The law in such eases was concisely stated in Finlay v. Finlay (240 N. Y. 429) reaffirmed in Matter of Bull (266 App. Div. 290, 291) and People v. Muller (124 N. Y. S. 2d 138, 141) in which the court said: ‘ ‘ The foreign judgment of absolute divorce which embodied the agreement between the parties regulating care and custody of the child, does not prevent a New York court from considering evidence as to the welfare of its infant ward. The Nevada decree in no way diminished the prerogative of the New York Supreme Court as parens patrias. People ex rel. Herzog v. Morgan, 287 N. Y. 317,39 N. E. 2d 255. The chancellor, exercising his jurisdiction in that capacity acts to do what is best for the interest of the child. ’ ’
The question still remains, however, whether the petitioner is entitled to rights of visitation. Without regard to the con *986 tractual rights of visitation that he has by virtue of the separation agreement, or its embodiment in the decree of divorce, the petitioner as father of the three children here involved has basic natural rights of visitation and access to his children. He should not be deprived of such rights unless he has in some manner forfeited his privilege to their exercise or if the exercise of such privilege is inimical to the welfare of the children. Neither of such conditions obtains here. The petitioner has been a doting, dutiful and attentive father, and I am convinced that the children have benefited from his attention and devotion to them. Any curtailment of such visitation would in my opinion result in a deprivation by them of what is the due of every child — the paternal guiding hand and the love of a father.
Except that Matter of Whittemore v. Whittemore (202 Misc. 175, 178) dealt with a proposal by the mother to take the children to Florida, instead of as here to California, the words of the court there are truly applicable to our factual situation. Said the court: “ There are no exceptional reasons presented why the court should permit the relator to remove the children over one thousand miles from their father. If it were necessary for the children to live in Florida for reasons of health, then the Nash case (supra) would justify such action. Perhaps, even if the relator had to live in Florida for reasons of her own health, the sense of the opinion in the Nash case might be extended to award custody to her. Even if she could show that her home had previously been in Florida, or that her parents lived there an exceptional situation might be presented. Such is not the case, however. It is a case where the mother seems more interested in vengeance upon the father than love of her children.”
I am convinced that the desire of the respondent to move to California is neither occasioned by the condition of her health nor the welfare of the children but rather by pique. The children, so far as the record discloses have never lived in California; their schools, their friends and their associations are all here in New York. Under such circumstances to uproot them just to accommodate the mother’s desire to be a long distance away from her former husband, so that his rights to visitation could be frustrated and the opportunity for their exercise made illusory, is neither just nor fair, nor is it in the near or long-range best interests of the children.
I spent a great deal of time with counsel in chambers in an . effort to adjust the differences between the parties in an amicable fashion. One of my final suggestions was that the respondent be permitted to move from New York City to another part of the State or to the States of New Jersey or Connecticut so that *987 the possibility of the children and their father getting together every week would not be entirely destroyed. The court’s efforts met a firm refusal from the respondent. The court regrets that its pacific efforts came to naught but this failure occasioned by the intense desire of the respondent to punish the petitioner should not be permitted to prevail over the natural rights of the father and the basic welfare of the children. I have concluded that the only fair thing to do under the circumstances here present is to continue the respondent’s custody of the children conditioned, however, on her not taking them out of the State of New York. Since the court, in a proper case, has the power to deprive a parent of custody in its entirety, it has the undoubted right to exercise less than its judicial power by limiting the nature of the accorded custody (cf. People ex rel. Halvey v. Halvey, 185 Misc. 52, affd. 269 App. Div. 1019, affd. 295 N. Y. 836, affd. 330 U. S. 610; Matter of Freed v. Freed, 309 N. Y. 668; Goldner v. Goldner, 309 N. Y. 675; Matter of Rich v. Kaminsky, 254 App. Div. 6 and Sandfort v. Sandfort, 278 App. Div. 331).
Since we are dealing here with a family relationship no useful purpose would be served by further dissecting or analyzing the nature of the respondent’s testimony except to say that she did not hesitate to attempt to mislead the court by her testimony with regard to whether or not she had actually made any arrangements to move to California, or whether she had any particular place in California to which she was going. Her equivocation on this question even when documentary evidence was brought into court and a careful observation of both the petitioner and the respondent have led the court to determine any factual issues in dispute in favor of the petitioner and against the respondent.
Submit order accordingly, on one day’s notice returnable not later than June 29,1962 providing for the continuance of custody in the mother upon the condition above stated and providing for visitation by the father upon the same basis as set forth in paragraph 3 of the separation agreement, and further providing for a modification of the order to be entered hereon upon the application of either party, if the facts warrant such modification.