Per Curiam.

Appellant father appeals from an order of the Appellate Division which affirmed an order of the Family *769 Court of Erie County, inter alia, awarding permanent custody of one of the children of the parties to the respondent mother.
When the parties were divorced by judgment of the Supreme Court, Monroe County, entered December 30, 1970, in an action instituted by respondent, the custody of their son and daughter, the infant issue of the marriage, was awarded to the mother, with visitation rights to the father as set forth in a separation agreement executed the previous November. Thereafter the father kept the son in Pennsylvania, in violation of the custody provision of said judgment, and instituted a habeas corpus proceeding in York County, Pennsylvania, which resulted in an order dated April 26, 1972 awarding custody of said child to the mother. In a second habeas corpus proceeding instituted in York County by the father, the order dated August 8, 1973, after summarization, stated: "Putting this together, under all these circumstances, we feel that the boy’s preference is decisive and we do hereby award custody to the father.” Although the mother appeared in both Pennsylvania proceedings, no appeal was taken from the order therein.
This proceeding, under subdivision (b) of section 651 of the Family Court Act and seeking the vesting of custody of the son in the mother, was instituted by an order to show cause dated November 26, 1973 and returnable December 19, 1973. For purposes of this proceeding, the son was kept by the mother in New York in violation of an agreement that she would return him to the father after the "Thanksgiving visitation in 1973.” On December 7, the parents and child had an interview in chambers with a Family Court Judge of Erie County and were examined by that court’s psychiatric clinic. With counsel, an unsuccessful effort was made to settle the controversy. On December 17, the father removed the son from the State. On the return day, the father did not personally appear but his attorney moved to vacate the order to show cause, a rather lengthy colloquy took place between the attorneys and the Family Court Judge, various decrees relating to custody were received in evidence and the testimony of the mother was taken, bearing on those proceedings but not in respect to the child’s welfare. The Judge observed in his memorandum that the father had prevented "a full hearing.”
In a custody proceeding arising out of a dispute between divorced parents, the first and paramount concern of the court is and must be the welfare and the interests of the child (Domestic Relations Law, § 70; Matter of Lincoln v Lincoln, 24 *770 NY2d 270, 271-272; Finlay v Finlay, 240 NY 429, 433-434; see Family Ct Act, § 651, subd [b]). Generally, a determination of that issue should be made only after a full and plenary hearing and inquiry (Bowman v Bowman, 19 AD2d 857; People ex rel. Cachelin v. Cachelin, 18 AD2d 1057; Glasser v Gluckstern, 14 AD2d 525; Matter of Uhlan v Uhlan, 283 App Div 1013; Fernandez v Fernandez, 282 App Div 1043; 15 NY Jur, Domestic Relations [Rev], § 348, p 581; cf. Matter of Jewish Child Care Assn. of N. Y. [Sanders], 5 NY2d 222, 228).
Insofar as the matter is to be remitted for further proceedings, it is well to repeat with emphasis certain well-established principles in this field of the law which deserves the utmost attention. First of all, the full faith and credit clause 'does not apply to custody decrees and the responsibility of courts for the welfare of infants transcends the rule of comity (Matter of Berlin v Berlin, 21 NY2d 371, 376, mot to amend remittitur granted 21 NY2d 970, cert den 393 US 840; Matter of Bachman v Mejias, 1 NY2d 575, 580, 581; Matter of Bull [Hellman], 266 App Div 290, affd 291 NY 792).
There has been no showing that the mother is an unfit parent or that she is less fit than at the time of the divorce decree. Custody of children should be established on a long-term basis, wherever possible; children should not be shuttled back and forth between divorced parents merely because of changes in marital status, economic circumstances or improvements in moral or psychological adjustment, at least so long as the custodial parent has not been shown to be unfit, or perhaps less fit, to continue as the proper custodian (Matter of Lang v Lang, 9 AD2d 401, 409, affd 7 NY2d 1029; see, also, Matter of Wout v Wout, 32 AD2d 709). "The rearing of a child requires greater stability than a roller-coaster treatment of custody” (Dintruff v McGreevy, 34 NY2d 887, 888).
In respect to the contradictory preferences expressed by the son, which alone reflect the tragedy of his plight, this court recently left no doubt as to the weight to be accorded such statements of desire in Dintruff v McGreevy (supra, p 888): "We believe that custody of children should be established on a long-term basis and should not be changed merely because a child at some time states that he desires it. While a child’s view should be considered to ascertain his attitude and to lead to relevant facts, it should not be determinative. If it were, then all a court would be required to decide is whether his preference of parent is voluntary and untainted and then *771 follow the child’s wish. This would certainly not be conducive to the proper raising of children.” A child of tender years is easily influenced, and the mischief of yielding to his or her every whim or the showering of favors, in a possible effort to receive a desirable response in the course of anticipated litigation, can be ruinous to the child’s character and ultimately the source of much unhappiness as well.
John, at times the "forgotten young man” in this parental struggle, was born on May 22, 1961. His sister, about four and a half years younger, has lived with the mother without interruption, the father never having made efforts to secure her custody. Courts should be reluctant to permit separate custody of siblings (Aberbach v Aberbach, 33 NY2d 592; People ex rel. Borella v Borella, 21 AD2d 871; Matter of Lang v Lang, 9 AD2d 401, 405, affd 7 NY2d 1029, supra; 2 Foster-Freed, Law and the Family, § 29.13). Young brothers and sisters need each other’s strengths and association in their everyday and often common experiences, and to separate them, unnecessarily, is likely to be traumatic and harmful. The importance of rearing brothers and sisters together, and thereby nourishing their familial bonds, is also strengthened by the likelihood that the parents will pass away before their children.
Because of the inadequacy of the hearing in the Family Court of Erie County, the order of the Appellate Division is reversed and the matter remitted to the Family Court, preferably before another Judge, for further proceedings.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Wachtler, Fuchsberg and Cooke concur in Per Curiam opinion.
Order reversed, without costs, and matter remitted to the Family Court, Erie County, for further proceedings in accordance with the opinion herein.