PATRICIA ENTWISTLE, Respondent, v CHARLES ENTWISTLE, Appellant.

Second Department, February 21, 1978

### APPEARANCES OF COUNSEL

*Steinhaus & Forman, P. C. (Neal Forman* of counsel), for appellant.

*Millman & Oster* for respondent.

### OPINION OF THE COURT

RABIN, J.

This appeal raises the difficult legal issue of how to safeguard the visitation rights of a noncustodial parent when the custodial parent has unilaterally removed the children from the jurisdiction. We hold that the order appealed from must be reversed, and the action remanded for a hearing in accordance herewith.

The parties were married in Brooklyn, New York in November, 1965 and, during the lifetime of the marriage, were domiciled in the State of New York. Two children have been born to the parties: Kristen, born in April, 1968, and Juliet, born in May, 1972. As the result of marital difficulties, the parties entered into a separation agreement in October, 1974.

Three months later the appellant obtained a temporary injunction preventing respondent from removing the minor children out of the jurisdiction. The parties subsequently sued each other for divorce predicated upon cruel and inhuman treatment. At the trial the respondent consented to the entry of judgment against her, whereupon the parties stipulated on the record that she would retain custody of the children, subject to certain visitation rights of the appellant. The stipulation also provided that the respondent "shall have the right to remove her residence together with the children to Greenwich, Connecticut; subject to the approval of the Court". Accordingly, the temporary injunction against plaintiff abated. The judgment of divorce was entered on September 23, 1975, at which time the children were seven and three years old, respectively.

Within the next month, and some time prior to October 30, 1975, the respondent remarried, took the children and moved to Winnetka, Illinois. In a subsequent affidavit, she stated that it was her "original intent * * * to move to Greenwich,

Connecticut * * * [but her] present husband's business affairs dictated the necessity for a move to Chicago, Illinois." The respondent thereafter commenced a proceeding in equity to register her New York divorce decree in Illinois and to redefine the appellant's visitation rights. It also appears upon the record that in the intervening two years since the original judgment of divorce was rendered in New York, the appellant has not seen his children, now aged nine and five, at all.

The appellant thereupon moved in Special Term to (1) punish the respondent for contempt for willfully failing to comply with the visitation provisions of the judgment of divorce and (2) transfer custody of the infants, based upon the visitation improprieties. Special Term denied both aspects of the relief sought, stating essentially that (1) an adjudication of contempt was unwarranted inasmuch as "the husband has not presented evidence of willful interference with his visitation rights sufficient to support a finding that the wife is guilty of contempt" and (2) modification of the custody provisions was also unjustified since the children were in Illinois and, as custody orders carry no *res judicata* effect, a New York order modifying or attempting to enforce the appellant's visitation rights would not bind the secondary forum, or be given full faith and credit there (see *May v Anderson,* 345 US 528, 536 [FRANKFURTER, J., concurring]; *Obey v Degling,* 37 NY2d 768, 770). Hence, Special Term directed the appellant to pursue his remedies in Illinois, inasmuch as equity should not exercise its jurisdiction where to do so would be futile.

The order must be reversed with respect to both questions. As to the adjudication of contempt, we hold that Special Term was gravely mistaken in concluding, as a matter of fact, that the respondent has not willfully interfered with the appellant's visitation rights. Not only did the respondent implicitly represent in the stipulation that if she moved, it would be to Greenwich, Connecticut "subject to the approval of the Court", she also fully admits that, having moved to Illinois, she failed to inform the appellant of her, or the children's, whereabouts.

Indeed, there is reason to believe that the respondent took affirmative action to keep the appellant ignorant of her whereabouts by directing the administration of the school which the elder daughter attended not to inform the appellant as to where the child's school records were to be sent, and also by obtaining an unlisted telephone number. The appellant was

forced to employ an investigator to ascertain the location to which his own two children had been removed. Additional support for the conclusion of willful interference is found in the appellant's unchallenged allegation that, long *before* the New York judgment was entered (which, of course, included respondent's implicit promise to move no further than Greenwich, Connecticut), the very house in Connecticut had, in fact, been *sold.* Given the short amount of time which elapsed between the entry of the New York judgment and respondent's petition to register it in Illinois, there is strong reason to believe that she never intended to move to Connecticut in accordance with the stipulation, but, in fact, has perpetrated a fraud and a deception upon the court.

■ ■ The Supreme Court of the United States has consistently held that the right to raise one's children and to be with them, are "[r]ights far more precious * * * than property rights" *(May v Anderson,* 345 US 528, 533, *supra).* Such rights are "deemed 'essential' " *(Stanley v Illinois,* 405 US 645, 651, citing *Meyer v Nebraska,* 262 US 390, 399; see, also, *Planned Parenthood of Mo. v Danforth,* 428 US 52, 90 [STEWART, J., concurring]). If respondent, at the time she entered into the stipulation, did not intend to uphold her obligation thereunder, it would reduce the appellant's visitation rights, as embodied in the New York judgment, to nothing more than an outrageous mockery, " 'a form of words', valueless" and manifestly devoid of substance *(Mapp v Ohio,* 367 US 643, 655). Such conduct is to be denounced, and will not be countenanced by this court under any circumstances. If Special Term determines that this pattern of willful deprivation of appellant's visitation rights was intended at the inception, it would constitute grounds for an adjudication of civil contempt (see Judiciary Law, § 753, subd A, par 2). Accordingly, a hearing is required with respect to this question.

■ We also direct that the hearing include the issues involved with respect to the application for a change of custody due to the visitation improprieties. "As in all custody disputes between divorced parents, the welfare of the children here [has] * * * to come first (Domestic Relations Law, § 70; *Obey v Degling,* 37 NY2d 768, 769)" *(Matter of Ebert v Ebert,* 38 NY2d 700, 702; see, also, *Matter of Bennett v Jeffreys,* 40 NY2d 543, 547). But it is readily apparent that the respondent's very act of preventing the two children of tender age from seeing and being with their father is an act so inconsistent with the best interests of the children as to, per se, raise a

strong probability that the mother is unfit to act as custodial parent. As the Appellate Court of Illinois (3d Dist.) correctly observed recently, "the sound public policy [of] this State encourages the maintenance of *strong inter-family relationships, even in post-divorce situations" (Frail v Frail,* — Ill App 3d —, 370 NE2d 303, 304 [emphasis supplied]). And in another recent case dealing with the not dissimilar problem of "child-snatching", the Court of Appeals declared: "in the long run, refusal to condone abduction of children will provide better stability for the * * * children, who would otherwise remain subject to the exercise of lawless self-help by either of their embattled parents" *(Matter of Nehra v Uhlar,* 43 NY2d 242, 246).

■ While respondent, in the instant case, has not technically "abducted" the children inasmuch as she was custodial parent, the net result as to the father is ultimately the same. In directing a hearing into the question of change of custody, we are mindful of Justice FRANKFURTER's classic admonition that "the child's welfare in a custody case has such a claim upon the State that its responsibility is obviously not to be foreclosed by a prior adjudication reflecting another State's discharge of its responsibility at another time" *(May v Anderson,* 345 US 528, 536, *supra).* Yet this does not automatically abrogate this court's continuing responsibility to litigants left in this forum (see, e.g., *Sampsell v Superior Ct.,* 32 Cal 2d 763, 780 [TRAYNOR, J.]). Nor can it be said that any "useful purpose on behalf of the children would be served by abstaining from exercise of jurisdiction and thereby projecting another round of protracted and protracting litigation" *(Matter of Nehra v Uhlar,* p 248, *supra).* It was the respondent who originally invoked the jurisdiction of the court by commencing her action for divorce, and she was fully within the jurisdiction of the court when she stipulated, ostensibly in good faith, to give the appellant certain specified visitation rights. Equity will not permit her to frustrate her obligations merely by boarding an airplane.

MOLLEN P. J., TITONE and MARGETT, JJ., concur.

Order of the Supreme Court, Nassau County, entered December 8, 1976, reversed, on the law and the facts, and action remanded to Special Term for a hearing and a new determination in accordance with the opinion herein.