# Martin Strahl, Appellant, v Leila Strahl, Respondent.

Second Department, March 12, 1979

572

APPEARANCES OF COUNSEL

*Phillips, Nizer, Benjamin, Krim & Ballon (Louis Nizer* and *William F. Reilly* of counsel), for appellant.

*Rosenthal & Shays (Irvin H. Rosenthal, Rona J. Shays* and *James W. Reiman* of counsel), for respondent.

**OPINION OF THE COURT**

Titone, J. P.

The defendant mother, Leila Strahl, made this motion to modify the parties' divorce decree by deleting the requirement that she reside with the three children of the marriage within

a radius of 50 miles of New York City. The purpose of her application was to remove the children to Florida. The plaintiff father, Martin Strahl, cross-moved for sole custody of the children or, in the alternative, for an order conditioning the mother's right to custody on her continued residency with the children within the afore-mentioned 50-mile radius.

The parties were married in April, 1962. Their three children, Neil, Pamela and Wendy, were born April 5, 1964, January 28, 1967 and June 5, 1969, respectively. Because of marital difficulties, the parties entered into a separation agreement on December 18, 1970. On September 25, 1974 the plaintiff obtained a "conversion divorce" based on the parties having lived apart one or more years pursuant to their agreement. The terms of the agreement were incorporated but not merged in the judgment of divorce. The agreement provided, *inter alia,* that although the children would reside with the mother, the parents would have joint custody. Pre- and post-divorce modifications of the agreement did not alter or change any provisions of the agreement pertaining to custody or visitation, but pertained solely to child support and property matters.

Pursuant to the agreement the father had the right to visit the children at any time on reasonable notice to the mother, and to have the children spend with him alternate weekends from Friday evening to Sunday evening, i.e., 26 weekends a year. He also had the option of having them spend with him either their entire Christmas or Easter school vacation, and one month of their summer vacation. If the children went to summer camp, the father had the right to have any or all of them spend one half of the remaining (summer vacation) time with him. Provision was also made that "[i]n order that the Husband's rights" of visitation "may not be impaired," the wife would maintain a residence within a radius of 50 miles of the City of New York, but would not be prevented from taking the children on brief trips.

Defendant moved to modify the judgment of divorce to permit her to maintain a permanent residence in Miami Beach, Dade County, Florida. As reasons for such requested move with respect to the children, she claimed she would be able to secure for them similar if not superior educational advantages without costs in Florida as well as outstanding recreational and summer activities at minimal costs. As for herself she would be able to pursue her career in advertising

and sales promotion which she could no longer do in New York City and at the same time spend more time with the children.

After a lengthy hearing, at which extensive testimonial and documentary evidence was introduced, the trial court found that the best interests of the children would be served by changing their residence from Kings County to Florida. The plaintiff was awarded the same visitation rights granted him originally plus the right to have the children with him for their entire summer vacation or any part thereof. However, to effectuate any visit with them, it would be necessary for plaintiff either to go to Florida or provide airline tickets for the children to visit him in New York.

The court was of the opinion, *inter alia,* that scholastically, environmentally and recreationally the move from Brooklyn to Florida would be beneficial to the children, that the Florida climate would ameliorate the eczema condition of Pamela, the older daughter, and that the part-time free lance employment of the mother would enable her to spend more time at home with the children.

As further justification for the change, the trial court observed that although plaintiff was a generous and loving father, his love for the children was "passive" in that he did not take full advantage of his liberal visitation allowances under the separation agreement, never took any of them on vacation and did not take as much parental interest in their scholastic work or progress as one might have expected.

In my opinion, the trial court's findings, with minor exception, are not supported by sufficient evidence in the record. Furthermore, those findings which are substantiated by the record do not justify the drastic relief accorded the defendant in this instance.

Simply stated, a parent may not be deprived of his or her right to reasonable and meaningful access to the children by the marriage unless exceptional circumstances have been presented to the court. The term "exceptional circumstances" or "exceptional reasons" is invariably associated with a situation where either the exercise of such right is inimical to the welfare of the children or the parent has in some manner forfeited his or her right to such access *(Matter of Denberg v Denberg,* 34 Misc 2d 980, 986).

With respect to the former, the trial record is devoid of evidence which even suggests that maintaining the *status quo*

will result either in irreparable harm to the children or even cause them some temporary inconvenience. Contrary to the finding of the trial court, no evidence of significance was adduced to support its conclusion that the educational facilities in Dade County are superior to any located in New York City or the 50-mile surrounding area.

Defendant's testimony as to the superior quality of educational facilities in Florida was based upon (1) her per diem teaching experience in the New York City public school system in 1968 and 1969 and (2) charts submitted by her, purportedly showing higher test scores of students in just six school districts in Miami Beach as opposed to those of private schools in Brooklyn which the children attended, and school districts in Glen Cove, Nassau County, and Setauket, Suffolk County. Defendant conceded that she had never conducted any investigation with respect to public schools in Westchester, Connecticut or New Jersey which were within the 50-mile radius. Such evidence patently lacked sufficient expert analysis and over-all documentation to justify the trial court's conclusion that scholastically the move to Florida "would be beneficial to the children." In fact, such finding was seemingly at variance with the trial court's taking judicial notice that the "Long Island school districts have superior ratings", as well as those in Westchester County.

Similarly there is nowhere present in the record so much as a paucity of evidence to suggest that environmentally and recreationally the move to Florida would be any more beneficial to the children than their remaining in Brooklyn or living anywhere else in the 50-mile radius of New York City. While Miami Beach may well have an excellent youth center, as defendant testified, such fact is hardly a compelling reason to uproot the children from their present surroundings and deny their father ready access to them. Furthermore, to list the many, multifaceted, and excellent recreational and cultural facilities both in New York City and the 50-mile surrounding area, readily accessible to both adults and the younger generation, would be to catalog the obvious and would constitute an unnecessary and time-consuming chore. Indeed, when asked on cross-examination whether there were recreational facilities perfectly suitable in New York for the children, defendant responded: "Sure there are."

Insofar as the trial court's reference to the climate in Florida ameliorating the eczema condition on the leg of the

parties' daughter Pamela, it should be noted that no competent medical evidence was adduced that such condition could not be corrected in this area by, *inter alia,* a skilled dermatologist.

I am also convinced that the trial court gave too much weight to the fact that defendant's housing accommodations in Florida are larger than those in her home in Brooklyn, and therefore they contain greater physical accommodations for a growing family. In my opinion such factor has no relevancy in this case. The record indicates that the living accommodations in the Brooklyn home of the defendant, while perhaps not spacious, are nevertheless comfortable for those who live there.

The extent to which a parent can indulge his or her children should have little if any bearing as to whether such parent is entitled to frequent contacts and a meaningful association with them. In this case the plaintiff, without regard to the rights of joint custody and visitation he has under the separation agreement and the divorce decree, has basic natural rights of visitation and access to his children (cf. *Matter of Denberg v Denberg,* 34 Misc 2d 980, 985-986, *supra).* Such rights should not be destroyed or weakened because the children would have, as defendant phrased it, a "freedom and lifestyle" in Miami that cannot be obtained for them either in Brooklyn or anywhere else in the 50-mile radius to which the parties previously agreed. Of major significance is the fact that the Brooklyn situs is convenient for the plaintiff and no evidence was adduced that larger and more suitable accommodations could not be secured within the 50-mile radius.

Mention should also be made at this time that no evidence was adduced at the trial to show that plaintiff had in some manner forfeited his joint custody and visitation rights under the separation agreement and the divorce decree (see *Matter of Denberg v Denberg, supra,* p 986). Nevertheless, the trial court, though conceding plaintiff was a "generous and loving father", justified its modification of the divorce decree pertaining to plaintiff's custody and visitation privileges by opining that it appeared he loved the children merely "in a passive way". As proof of such passiveness, the trial court noted that plaintiff did not visit the children as frequently as he could have under his almost unlimited rights of visitation, that he never took them on vacations as he was entitled to do either during Christmas or Easter vacation, and that he failed to

take them with him during the period in the summer he was entitled to have them.

■ In determining whether a parent's privilege to associate with the children of the marriage should be either diminished or discontinued, a trial court should not penalize the parent because he or she has not taken full advantage of visitation rights previously granted. The test is not perfection but, rather, whether, under all the facts adduced, such parent has demonstrated a sincere desire to be in the company of the children and has had a close, continuous and meaningful association with them over a significant period of time.

■ Granted that plaintiff did not exercise all his visitation rights under the separation agreement and the divorce decree, it does not follow that a slight deficiency in that regard constitutes either a forfeiture within the purview of the *Denberg* case, or evidences merely "passive" love as the trial court concluded. Such categorization, moreover, is belied by evidence to which the trial court did not allude. For example, the defendant's next door neighbor testified that plaintiff visited the children at least once a week and also on Sundays.

Testimony was also adduced that after plaintiff moved to Long Island he continued to see the children at least once during the middle of each week and took them to his new home two weekends each month. He also telephoned them several times a week, saw them on their birthdays and never missed a visiting day when the children were at summer camp. The record indicates he participated in their school activities, including parent-teacher conferences, etc., and comforted them and manifested deep parental concern whenever they were ill. These and other facts found in the record clearly demonstrate that plaintiff was not only a concerned parent, but also took an active interest in the children's educational, spiritual and material welfare.

Defendant admitted that the children needed plaintiff's counsel and guidance. It should also be noted that during the approximately eight years between the parties' separation and the making of this motion, plaintiff has been constant in his payments for child support.

I also am of the opinion that defendant's purported ability to pursue her career in Florida as a free lance writer in advertising and sales does not justify removal of the children to that State in derogation of plaintiff's right to joint custody and virtually unlimited visitation. Defendant admitted at the

trial that financial considerations were not the main reasons for her moving to Florida. The record also reveals that her purchase of a Florida home for $165,000 was evidently an all cash deal, and that she receives up to $24,000 a year from her fiancée, $15,000 in child support from plaintiff and other substantial sums from her father. The trial court itself remarked that there appeared to be no "dire financial requirement for her to move to Florida."

The trial court has also based its modification of the divorce decree on the fact that at an *in camera* hearing, the three children by the marriage indicated a desire to move to Florida with their mother. However, they also expressed strong affection for the plaintiff and indicated that he was a loving, concerned and dutiful parent. In any event, while the children's attitudes should be given consideration, their wishes are not necessarily determinative. The best interests of a child, particularly over a long term, often require the "overbalancing" of subjective desires by more dependable objective criteria. In this instance, other than the children's wishes there was no change of circumstances with respect to the crucial matter of fitness, to justify a modification of the provisions which the parties themselves determined more than eight years ago were in the best interests of the children (see *Matter of Ebert v Ebert,* 38 NY2d 700-703; *Aberbach v Aberbach,* 33 NY2d 592).

Succinctly stated, no exceptional reasons were presented in this case at the trial level to justify the removal of the children to a community more than 1,000 miles from their father. For all intents and purposes, such removal would unjustifiably interrupt the regularity of visitation to which the plaintiff is entitled pursuant to the agreement of the parties. In view of the fact that plaintiff's busy work schedule prevents him from enjoying any extended period of time off from his labors, the trial court's award of the "same visitation rights" originally obtained by him (which included weekly visits) provided he either travel to Florida, or provide airline tickets for the children to visit him in New York, renders his right of visitation illusory and is manifestly devoid of substance (see *Entwistle v Entwistle,* 61 AD2d 380, 384; *Matter of Whittemore v Whittemore,* 202 Misc 175; *Matter of Denberg v Denberg,* 34 Misc 2d 980, *supra).* The following language of Mr. Justice SHAPIRO in *Matter of Denberg v Denberg (supra,* pp 985-986), a case factually similar to this one, is pertinent at

this point: "Without regard to the contractual rights of visitation that he has by virtue of the separation agreement, or its embodiment in the decree of divorce, the petitioner as father of the three children here involved has basic natural rights of visitation and access to his children. *He should not be deprived of such rights unless he has in some manner forfeited his privilege to their exercise or if the exercise of such privilege is inimical to the welfare of the children.* Neither of such conditions obtains here. The petitioner has been a doting, dutiful and attentive father, and I am convinced that the children have benefited from his attention and devotion to them. Any curtailment of such visitation would in my opinion result in a deprivation by them of what is the due of every child—the paternal guiding hand and the love of a father." (Emphasis supplied.)

Since the three children by the marriage are presently residing in Florida with their mother pursuant to the order appealed from, the defendant should return with them to this State within 10 days after the end of the current term. Defendant should also, within such period, resume her residence with the children within the 50-mile radius of New York City prescribed by the separation agreement and the divorce decree, in order that plaintiff may continue to enjoy his custody and visitation rights under the separation agreement and the divorce decree.

Should defendant fail to abide with said directives, the plaintiff shall be relieved of his obligation to pay child support until such time as defendant returns to New York and resumes her residence with the children (cf. *Borax v Borax,* 4 NY2d 113, 116; *Feuer v Feuer,* 50 AD2d 772, 773; *Abraham v Abraham,* 44 AD2d 675).

■ I believe that the trial court erred in awarding counsel fees to defendant in the sum of $5,850 for services rendered her in connection with plaintiff's cross motion for exclusive custody. The record clearly reveals that defendant has sufficient means to pay her own counsel fees.

Accordingly, the order should be modified and defendant's motion denied, without costs. Plaintiff's custody and visitation rights should remain in accordance with the terms of the separation agreement between the parties and the divorce decree. Defendant's right to continued child support is conditioned upon her resuming her residence with the children in the City of New York or a 50-mile radius thereof within 10

days of the end of the current school term. The denial of plaintiff's cross motion for sole custody should be affirmed, also without costs.

SUOZZI, O'CONNOR and MARTUSCELLO, JJ., concur.

Order of the Supreme Court, Kings County, dated August 15, 1978, modified, on the law and the facts, by deleting therefrom the provisions which granted defendant's motion and substituting therefor a provision denying the said motion. As so modified, order affirmed, without costs or disbursements. Defendant is directed to return to New York State with the children and resume a residence within New York City or within a radius of 50 miles thereof within 10 days after the end of the current school term. In the event that defendant fails to comply, plaintiff shall be relieved of his obligation to pay child support until such time as defendant complies.