FRANCES S. DAGHIR, Respondent, v KHALIL S. DAGHIR, Appellant.

Second Department, July 27, 1981

APPEARANCES OF COUNSEL

*Jeffrey C. Richards (James E. Coombs* of counsel), for appellant.

*Charlotte M. Frank (Laura Zeisel* and *Kathryn S. Lazar* of counsel), for respondent.

### OPINION OF THE COURT

MOLLEN, P. J.

On this appeal, a noncustodial parent strenuously argues that his right to meaningful visitation with his children will be destroyed by his former wife's efforts to accommodate an entirely unnecessary career choice by her new husband. The wife contends that her actions were a natural and proper concomitant of her remarriage and that her former husband's visitation right will be preserved in its essential respects. As with all cases involving visitation, we must resolve the dispute, not solely out of consideration of the

desires and convenience of the parents, but out of concern for the best interests of the children. We turn first to a brief review of the facts, which are not in dispute.

The parties were married in 1965 and produced three children, now 15, 13 and 9 years of age. In 1976 Frances Daghir, the wife, obtained a judgment of divorce. The judgment, *inter alia*, awarded her custody of the children, with visitation to the husband, Khalil Daghir, every Sunday from noon to 7:00 P.M. and two weeks in the summer. Additionally, Khalil was ordered to pay alimony and child support.

There is no dispute over the fact that Khalil fulfilled his support obligations and took full advantage of the visitation rights granted to him. There is also no question that he was and remains a loving and devoted father whose visits were warmly welcomed by his children.

Sometime after the divorce, Frances established a relationship with one Joseph Coughlin, a component engineer who had been employed by IBM in that capacity for some 27 years. He worked at the same Mid-Hudson Valley facility where Khalil was employed as a physicist. In November, 1980 Coughlin was approached by IBM about the possibility of a two-year assignment in France. He flew to France to assess the opportunity and, upon his return on December 4, 1980, he accepted the assignment.

Some three weeks later, on December 27, 1980, Frances and Coughlin were married and prepared to move to France with the Daghir children. For reasons of her own, however, Frances never saw fit to inform Khalil of the impending move. Instead, he learned about it through the IBM "grapevine" and immediately brought an order to show cause enjoining the move and seeking, *inter alia*, to modify the judgment of divorce to prohibit Frances from removing the children from the country without his written consent. In the alternative, he asked that, if Frances insisted on moving to France, custody be transferred to him for the period of her absence.

A hearing was held on the application. The sole witness to appear was James J. Heenan, Coughlin's immediate superior and career manager at IBM. Heedan testified that Coughlin's acceptance of the assignment would have no

bearing on his career advancement at IBM. It involved no financial benefit to him, and, had he rejected it, as IBM employees sometimes do, he would have suffered no financial penalty or impediment to his career. The fact that the assignment required him to deal with people in a foreign country, however, would enrich his portfolio.

According to Heenan, the assignment was scheduled to terminate after two years, but Coughlin could ask for an extension. Moreover, there was no guarantee that, upon completion of the assignment, Coughlin would be reassigned to the Mid-Hudson Valley facility. That, according to Heenan, would depend upon business conditions at the time.

At the conclusion of the hearing, the court denied Khalil's motion and permitted Frances to take the children to France. The court attempted to alleviate the consequent interruption of contact between Khalil and his children by providing for additional visitation and a reduction in support payments. Summer visitation was enlarged to a total of 30 days, inclusive of time for travel for which Frances would bear the expense. The reduction in support payments by some $4,000 annually would, in the court's view, permit Khalil to travel to France to see the children, and it was ordered that he have such visitation in France as the parties may agree upon, but in no event less than one week to coincide with the children's school vacations.

Khalil now appeals from this determination. We reverse.

Disputes involving custody and visitation are acknowledged to be among the most difficult the courts are called upon to resolve, for they so deeply affect the lives of children and the parents who love them. (See *Matter of Gloria S. v Richard B.*, 80 AD2d 72, 78-79 [MANGANO, J., concurring in part and dissenting in part].) Several fundamental principles have emerged to guide the courts in deciding such cases. It is the firmly established policy of this State, for example, that, wherever possible, the best interests of a child lie in his being nurtured and guided by both of his natural parents. (See *Weiss v Weiss*, 52 NY2d 170.) Thus, a divorced, noncustodial parent and his children jointly enjoy a natural right of visitation. (See *Matter of Den-*

*berg v Denberg,* 34 Misc 2d 980, 985-986 [J. Irwin Shapiro, J.].) To be meaningful, however, visitation must be frequent and regular. Only then may a noncustodial parent provide his child with the guidance and counsel youngsters require in their formative years. Only then may he be an available source of comfort and solace in times of his child's need. Only then may he share in the joy of watching his offspring grow to maturity and adulthood. (See *Weiss v Weiss, supra.)* Our court fully recognized the importance of visitation to both parent and child when we held that "a parent may not be deprived of his or her right to reasonable and meaningful access to the children by the marriage unless exceptional circumstances have been presented to the court. The term 'exceptional circumstances' or 'exceptional reasons' is invariably associated with a situation where either the exercise of such right is inimical to the welfare of the children or the parent has in some manner forfeited his or her right to such access". *(Strahl v Strahl,* 66 AD2d 571, 574, affd 49 NY2d 1036; see, also, *Matter of Becker v Becker,* 75 AD2d 814.) Indeed, so jealously do the courts guard the relationship between a noncustodial parent and his child that any interference with it by the custodial parent has been said to be "an act so inconsistent with the best interests of the children as to, per se, raise a strong probability that the [offending party] is unfit to act as custodial parent." *(Entwistle v Entwistle,* 61 AD2d 380, 384-385 [Rabin, J.], app dsmd 44 NY2d 851.)

That is not to suggest, of course, that a custodial parent must scrupulously avoid all conduct which may in any way affect, no matter how slightly, the other parent's right of visitation. Custodial parents have rights as well. Among them is the right to remarry, and we recognize that the obligations of a new marriage may legitimately, if rarely, require even "a dramatic change of locale." *(Weiss v Weiss, supra,* p 177.) The decision to bear children, however, entails serious obligations and among them is the duty to protect the child's relationship with both parents even in the event of a divorce. Hence, a custodial parent may be properly called upon to make certain sacrifices to ensure the right of the child to the benefits of visitation with the non-

custodial parent. The search, therefore, is for a reasonable accommodation of the rights and needs of all concerned, with appropriate consideration given to the good faith of the parties in respecting each other's parental rights. (Cf. *Matter of Denberg v Denberg, supra.*) With these principles in mind, we turn to the facts at bar.

The Family Court's order would, in all likelihood, separate a loving and devoted father from his children for two consecutive periods of one year each. It is pure speculation to suggest that the reduction in child support payments ordered by the court will actually enable Khalil to visit his children in France during the year, for travel abroad is not exclusively dependent upon financial considerations. Thus, from summer to summer, Khalil would likely be deprived of personal contact with his children, and they in turn would lose his guiding hand and influence in their lives.

It is argued, however, that the visitation provided for in the order increases the total period of time which Khalil will be permitted to spend with the children. Again, visitation in France must be deemed speculative at best. And even if the 30-day summer visitation ordered by the court exceeds in actual number of hours the visitation previously enjoyed, that fact is of relatively small significance. Although the total number of visitation days per year is an important consideration, far more significant is the frequency and regularity of the visitation itself. *(Weiss v Weiss, supra.)*

Frances contends that the move to France will provide the children with "a unique learning experience" and therefore is in their best interest. We agree that an opportunity to experience life in a foreign country may prove worthwhile and beneficial for a child. Nevertheless, the benefits of such an experience are far outweighed by those which flow from frequent and regular contact with the child's loving and responsible natural parent. Moreover, it is misleading to term the move temporary in the context of this case. Two years is a long time in the life of a child. Many significant and formative events occur in a period of such length, and much parental guidance is necessary. And, in any event, there is no guarantee here that, at the end of the two years, the children will be returned to the area in which Khalil lives and works.

It is also highly significant that the move to France was not required by any truly compelling factor. Coughlin apparently accepted the assignment simply in order to enrich his portfolio. He did not stand to benefit otherwise in his career. He gained no financial advantage from the move. He stood to lose nothing by rejecting it. (Cf. *Cmaylo v Cmaylo*, 76 AD2d 898.) And, on the question of good faith, we cannot ignore the fact that Frances married Coughlin after he had accepted the offer. Thus, she knew that her remarriage would involve moving the children to France, yet she made no attempt to discuss the matter with Khalil and indeed chose to conceal it from him.

On balance, therefore, we conclude that the Family Court's determination unreasonably and unjustifiably interferes with Khalil's right to meaningful visitation and is contrary to the children's essential best interests. Because moving the children to France is not required by any compelling financial, educational, employment or health considerations, and because it would significantly curtail the frequency, and therefore the quality, of what was regular and welcomed visitation, the order appealed from should be reversed. (See *Matter of Whittemore v Whittemore*, 202 Misc 175.) Khalil's motion should be granted insofar as it seeks to modify the divorce judgment by adding a provision prohibiting the removal of the children from New York State for purposes of residing elsewhere, without his written consent, and insofar as it seeks a temporary transfer of custody, for so long as Frances shall reside outside of New York State.

MANGANO, J. (dissenting). The order appealed from is fair and reasonable, and attempts a Solomonic solution to the instant dispute. It represents humane sensitivity to the competing interests and concerns of the parties. It abrogates no one's rights, but alters their implementation so as to realistically respond to the changing needs of all. And, most importantly, it appears singularly guided by a desire to ensure the best interests of the children by preserving the stability of their relationship with their custodial parent, by maintaining significant contact between them and their noncustodial parent, and by allowing them to take advan-

tage of expanding opportunities for growth and learning.

It must be emphasized that the custodial parent intended to move her family's home temporarily to France because her present husband had made a career choice necessitating such a move. It may be true that this career choice was not dictated by any financial or promotional considerations. Nevertheless, the choice was made. The real question, then, is whether the wife must now choose not to accompany her husband in his temporary relocation in order to retain the custody of her children and maintain her former husband's weekly visitation rights, or relinquish custody to the latter in order to fulfill her present marital obligations. This is an impossible choice, which should be avoided, if there can be a reasonable accommodation of the parties' rights. I am convinced that the Family Court's carefully fashioned order effected such an accommodation.

It should also be emphasized that the majority has decided to transfer custody for so long as the mother shall reside outside of New York State. In other words, it would transfer custody from the mother, who has always had custody of the children, to the father, who was denied custody by a judgment of divorce. In that judgment the Supreme Court, Dutchess County, found that the mother had provided a good home for the children during the period the parties were separated, and that the father was unable adequately to care for the children while working full time and that there was some basis to believe that, if the father had been granted custody of the children, they would have been removed to Lebanon on a permanent basis. Custody is now being transferred by this court upon a record that does not adequately explore the crucial issue of the father's present ability to maintain the care and custody of the children. Such a change of custody should only be ordered after a thorough fact finding on all issues relevant to the children's best interests and based upon the best available evidence. This record does not afford our court a fact finding of this nature upon which to premise an order for a change of custody.

Accordingly, I dissent and vote to affirm.

DAMIANI and WEINSTEIN, JJ., concur with MOLLEN, P.

J.; MANGANO, J., dissents and votes to affirm the order with an opinion in which RABIN, J., concurs.

Order of the Family Court, Dutchess County, dated March 9, 1981, reversed, on the law, without costs or disbursements, and the defendant's motion granted to the extent of modifying the judgment of divorce by adding provisions thereto prohibiting the removal of the parties' children from New York State, for purposes of residing elsewhere, without defendant's written consent and granting temporary custody of the children to the defendant for so long as the plaintiff shall reside outside of New York State.