■ GAIL B. B. MARTINEZ, Respondent-Appellant, v MICHAEL B. KONCZEWSKI, Appellant-Respondent. — In an action in which a divorce was granted, the parties cross-appeal from stated portions of an order of the Supreme Court, Queens County (Zelman, J.), dated May 13, 1981, which, *inter alia,* denied the defendant father's application to enjoin the plaintiff from removing their child from New York State and relocating in Florida and modified the visitation rights of the defendant. Order modified, as a matter of discretion, by adding provisions thereto providing that (1) the plaintiff is to bear the reasonable expense of the defendant's air fare for all of the indicated visitation periods actually spent in Florida and directing the plaintiff to furnish the defendant with a round-trip ticket or its monetary equivalent upon seven days' written notice, and (2) the plaintiff is to bear the reasonable travel expenses associated with the child's visits to New York in accordance with paragraphs "(b)", "(c)" and "(d)" of the fourth decretal paragraph. As so modified, order affirmed insofar as appealed from, without costs or disbursements. Although otherwise in agreement with Special Term that the instant case presents one of those admittedly rare situations in which the legitimate obligations undertaken by a divorced parent who marries anew require "a dramatic change of locale" (*Weiss v Weiss,* 52 NY2d 170, 177; *Daghir v Daghir,* 82 AD2d 191, 194; cf. *Cmaylo v Cmaylo,* 76 AD2d 898), which is not inconsistent with the best interests of the child, the preservation of those "best interests" requires a further liberalization of the visitation provisions of the order under review. The indicated changes are intended to render the existing schedule of revised visitation more meaningful to both the child and the noncustodial parent by attempting to insure the frequency, quality and regularity of such visits (see *Daghir v Daghir, supra;* see, also, *Weiss v Weiss, supra,* p 175). They are not intended as a punishment to the custodial parent or to render her relocation more burdensome, but rather are dictated by the economic realities of the situation (cf. *Weiss v Weiss, supra,* pp 176-177). In this regard, we note that the money to be saved by the plaintiff in removing the child from a private to public school as a consequence of her relocation should help to defray the added expenses envisioned by our order, and that the defendant should apply the amount of the suspended support payments (i.e., $50 per week) in discharge of the contemplated food, lodging and local transportation expenses which will be occasioned by the visitation periods spent in Florida. We would also note that the instant relocation was apparently undertaken in good faith, based upon

the legitimate professional and financial concerns of the plaintiff's new husband (cf. *Daghir v Daghir, supra,* p 196), and, although of limited significance (see *Weiss v Weiss, supra,* p 174), that it is not at variance with the terms of the parties' 1979 separation agreement, which does not purport to restrict the geographical movements of the custodial parent. Rabin, Gulotta and Cohalan, JJ., concur.

Lazer, J. P., dissents and votes to reverse the order in accordance with the following memorandum. This appeal presents a further factual variation among the burgeoning sets of circumstances in which the judicial system is required to pass on the right of the custodial parent to limit the other parent's visitation rights by moving to a distant domicile with the marital offspring. Meghan, the parties' child, is six years old and the only issue of a 10-year marriage which terminated in 1979. Under the parents' separation agreement, which survives the divorce decree, the mother (Dr. Gail Ballweg Martinez) was given custody and the father (Michael Konczewski) liberal visitation. In December, 1980 the mother, a board certified neurologist, remarried and has since moved to Florida to be with her new husband who has recently established a chiropraxis office in Hialeah. Mr. Konczeswki is a school psychologist who earns $23,000 per year. The mother's current husband, Dr. Frederick Martinez, also is a divorcee and he, too, has a daughter — now 11 — who lives with her mother in New York. Although he is a graduate of chiropractic school, licensed to practice in New York, Dr. Martinez has relocated to Florida because of the advantages of chiropractic practice in that State and the benefits which could flow there from his Cuban extraction and fluency in Spanish. In Florida, chiropractic care is covered by medical insurance policies and chiropractors have a broader latitude to practice medicine including hospital privileges and the right to take X rays. Dr. Martinez' ethnic background is stated to be of no advantage in New York, while it has particular significance in Florida. During their premarital period of residence together in New York, Meghan's mother and Dr. Martinez decided that his professional ambitions were important enough to make the move to Florida. Until that time, Dr. Ballweg Martinez had maintained a successful neurology practice in Brooklyn with a gross income of over $80,000 in 1980. It is obvious that for her the relocation means the building of a new practice. But while Dr. Martinez was willing to distance himself from his daughter, Dr. Ballweg Martinez decided that Meghan should accompany her. Without informing Mr. Konczewski of her intention to remove Meghan, the mother took the neurology boards in Florida in December, 1979 and purchased a home there in May, 1980. At the hearing on the father's motion to prevent the child's removal, the mother admitted that these actions were taken in contemplation of marriage. Since the marriage took place after Dr. Martinez had commenced practicing in Florida, it is apparent that the mother was well aware that the marriage would involve taking Meghan to Florida (see, e.g., *Daghir v Daghir,* 82 AD2d 191, 196). Nevertheless, she made no effort to discuss the matter with her former spouse. This course of conduct reflects a lack of good faith which is inconsistent with Meghan's best interests and raises a question as to the mother's fitness to act as custodial parent (see *Entwhistle v Entwhistle,* 61 AD2d 380, app dsmd 44 NY2d 851). In any event, when Mr. Konczewski learned of his former wife's intention, he obtained an order enjoining Meghan's removal pending a hearing of his motion for a change of custody. In denying the motion, Special Term modified the separation stipulation and the divorce decree to increase the father's summer visitation from one month to two, reduced his right to weekend visitation from two weekends to one to take place in Florida, and suspended his obligation to pay child support in the amount of

$50 per week. Meghan was then taken to Florida. My colleagues are in basic agreement with Special Term's resolution of the removal question, but in an attempt to cushion its unhappy effect on the father's relationship with Meghan, they seek to enhance his ability to make Florida visits by requiring the mother to pay for his transportation there once a month. While I am sympathetic to the majority's effort, I do not believe that Meghan and her father's rights to have a meaningful parental relationship are so easily reconciled with the mother's move. Recent cases involving custody and visitation disputes have held that a geographic move of the child will not be permitted when it would effectively deprive a parent of regular access to the child (see, e.g., *Weiss v Weiss,* 52 NY2d 170; *Daghir v Daghir,* 82 AD2d 191, *supra; Strahl v Strahl,* 66 AD2d 571, affd 49 NY2d 1036; *Munford v Shaw,* 84 AD2d 810). This court has held that the primary concern — the child's best interests — would generally be furthered by her being nurtured and guided by both of her natural parents (see *Daghir v Daghir, supra,* p 193). Although the consequences of marital dissolution may place legal custody in one of the parents, the noncustodial parent's role as a psychological guardian is not necessarily terminated (see *Weiss v Weiss, supra,* p 175). To protect Meghan's well-being, regular, frequent and meaningful contacts with her noncustodial parent should be encouraged (see *Daghir v Daghir, supra*). Resolution of the dilemma turns on the most reasonable accommodation of the rights and problems of the child and the parents (*Weiss v Weiss, supra,* pp 176-177; *Daghir v Daghir, supra,* p 195). Although visitation frequently is regarded as a right of the noncustodial parent (*Matter of Denberg v Denberg,* 34 Misc 2d 980, 986), it should more properly be termed a joint right of the parent and the child (*Weiss v Weiss, supra,* p 175). A custodial parent may properly be called upon to make certain sacrifices to ensure effective visitation of the child by the noncustodial parent (*id.*). In my view, the mother has not presented compelling financial, educational, employment or health considerations (see *Daghir v Daghir, supra; Matter of Burkart v Montemarano,* 72 AD2d 561) which warrant Meghan's removal to a locale more than a thousand miles away to satisfy the new husband's professional and financial ambitions. Satisfaction of those ambitions will require the father — for 10 months of the year — to exercise his parental rights once a month from a motel room or its equivalent from 6:00 P.M. on Friday to 6:00 P.M. on Sunday with a few extra days a year in New York on alternate Christmas and Easter holidays. It is obvious from this record that Meghan's relationship with her father is severely threatened by her move. Even Special Term noted that while the child loves her father she is sometimes reluctant to communicate with him. In this respect, it is unfortunate that some method was not availed to permit the introduction of the tapes of telephone conversations offered to show that Dr. Martinez was trying to wean Meghan away from her relationship with her father. Nevertheless, I cannot gainsay the discretion of the Trial Justice who excluded the tapes on the ground of surprise. In any event, it is hardly likely that one weekend a month of visitation for five-sixths of each year plus an alternate Christmas or Easter period will permit the father to maintain any meaningful relationship with Meghan in her formative years. Once the obligatory treks to Disneyworld and a few other places have been done with, transient lodgings will hardly provide the place for a father to nurture a relationship with a child of such tender years. While the extra month in the summer should help the relationship to survive, it will become the father's burden to convince Meghan that her relationship with him is more important than any desire she may have to attend summer camp or to enjoy other vacation amenities with her friends in Florida. I recognize, of course, that a custody award should not be upset in the

absence of a demonstration of a change of circumstances which have rendered the mother an unfit parent or less fit than at the time of the divorce (*Obey v Degling,* 37 NY2d 768, 770). Here, the mother's conduct in planning and them removing Meghan to Florida unjustifiably interferes with the father's relationship with Meghan. Therefore, it presents a change of circumstances which permits a modification of the custodial arrangements which the parties themselves had fashioned (cf. *Matter of Ebert v Ebert,* 38 NY2d 700; see, e.g., *Daghir v Daghir,* 82 AD2d 191, *supra*). Upon such a change of circumstances, the court may consider the paramount concern, the best interests of the child (*Obey v Degling, supra*). While the continuity and stability of Meghan's relationship with her mother, with whom she has lived since 1979, is a factor in evaluating the child's best interests, I am moved by the fact that professional obligations will prevent Dr. Ballweg Martinez from offering her daughter the advantage of constant presence. On the other hand, Mr. Konczewski has demonstrated that he is a loving, concerned parent who has substantially exercised his prior opportunities to visit his daughter, and he is in a position to provide a good home for her with his own new spouse. A parent should not be deprived of reasonable and meaningful access to his or her child unless exceptional circumstances are presented (see *Strahl v Strahl,* 66 AD2d 571, affd 49 NY2d 1036, *supra*). Meghan's best interests lie with the maintenance of strong relationships with both parents. I believe that a change of custody in favor of the father will give those relationships a better chance of survival. Since the mother's new spouse has a child in New York, the Hialeah couple will be able to visit their children together. Considering their likely joint income, there is a better chance that they will be able to obtain more advantageous lodgings and provide more of a family atmosphere while they are here. Accordingly, I would reverse and grant Mr. Konczewski's application to prohibit Meghan's removal from New York State, and transfer her custody to him. The mother should have the same visitation rights as the father has under Special Term's order, but I would remand for a hearing on the question of child support in view of the reversal of custodial roles.